JOHN RUNK v. JAMES TEN EYCK.

1. The admissions or declarations of an agent are admissible against his principal only when they constitute part of a transaction within the scope of the agent's power. Declarations or admissions by an agent concerning a transaction within the scope of his power, if made after or forming no part of the transaction, are not admissible against his principal.

2. The admission or assertion of a fact by an agent, although relating to the business in which he was employed, is not evidence against the principal. Thus the declaration of a surveyor touching the lines of a tract he was employed to survey, is not evidence against his employer.

3. Reputation, or the declaration of persons of competent knowledge, is not admissible as proof of private boundaries.

The writ of error in this case was to remove the record and proceedings in a suit in the Supreme Court. The judgment in that court was for the plaintiff upon a verdict and postea. The errors assigned were founded mainly upon a bill of exceptions taken at the Somerset circuit, where the cause was tried, to the admission of evidence. The facts and grounds for reversal relied upon, distinctly appear in the opinion of the court.

Mr. *Frelinghuysen* and Mr. *Vroom*, for the plaintiff; Mr. *Brown* and Mr. *Dayton*, for the defendant.

The opinion of the court was delivered by

OGDEN, J.　This is an action of trespass on the case commenced in the Supreme Court, to recover damages for an alleged nuisance in the erection and maintenance of a mill-dam across the North Branch of the Raritan river.

The trial of the issue joined upon the plea of not guilty, came on before Justice Nevius and a jury, at the Somerset Circuit, in April, 1852.　After proof by the plaintiff of his possession of the lands charged to be injured by the unlawful flowage, in further support of his action, he offered and the court admitted in evidence a paper claimed to be a map of the property of the plaintiff; and also a certificate of an admeasurement of the dam of the defendant in the year 1805, signed by Peter D. Vroom and Jacob J. Ten Eyck.

The defendant objected to the legality of the evidence, and upon its admission by the court, he prayed a bill of exceptions, which was allowed and sealed.

Upon the coming in of the postea, judgment was rendered in favor of the plaintiff below, for the amount of the verdict and costs, which judgment has been removed into this court by writ of error.

The assignments of error present two questions for the consideration of this court.　The first is founded on the record sent up with the writ; the second upon the matters presented by the bill of exceptions.

The testimony objected to was a map, upon which was a writing in these words: "We, the subscribers, do hereby certify the above draft, as taken by James Ten Eyck, and as surveyed by Peter D. Vroom, August 20th and 21st, 1805, is a true copy taken from and compared with the original draft made by Peter D. Vroom, now in the hands of Jacob J. Ten Eyck, by a scale of five chains to an inch, the height and length of John Bayles' mill dam, as taken by Peter D. Vroom, at the same time.　The length of the dam is six hundred and twenty-nine feet; the length from the mill to the flood-gate is one hundred and sixty-four feet; the height of the same is three feet four inches.　The flood-

gate is ten feet long and three feet high; twenty-five feet from the flood-gate, the dam is three feet two inches high; one hundred and sixty-five feet, the dam is three feet four inches high; the remainder, two hundred and sixty-five feet, the dam is three feet high. The upper edge of the sill lays level with the water below the dam at low water mark.

(Signed)    PETER D. VROOM,
JACOB J. TEN EYCK."

That paper contained two distinct pieces of testimony—the one applicable to the possession and seizin by the plaintiff, of the lands said to be injured; the other intended for establishing the height of the dam of the defendant in 1805.

The objection to the admissibility of the map was well taken. The paper received in evidence shows that the draft was only a copy, and that the original was in the hands of Jacob J. Ten Eyck. The original was the better evidence, and it should have been produced, or if it was not within the reach of the party, its absence should have been sufficiently accounted for, before the copy could become competent testimony. This rule of evidence is too well settled to require support by argument or authority.

The effect of testimony upon the jury, however, may be considered in determining the action of a court of review upon its illegal admission. " It is a settled rule of law, that if the jury have found just such a verdict as they ought to, and as they might with propriety have done if unlawful evidence had not been admitted, the court will not grant a new trial merely because the judge erred in admitting such unlawful evidence. In such case it is manifest no harm has been done." 3 *Har.* 301.

The paper used as a map was merely cumulative proof. It was not necessary for making out the plaintiff's case; and it is manifest that no prejudice could have resulted to the defendant from its admission, if it had been detached from the certificate, respecting the size of the dam. The

judgment, therefore, ought not to be disturbed on that ground.

Did the justice err in permitting the certificate to go to the jury ? Was it legal evidence in any respect in which it has been viewed ?

The plaintiff below claims it to be legal upon three distinct grounds :

I. That it is such an act of Colonel Vroom, as agent of the grantor of the defendant, as would bind the principal, and of consequence his privies in estates.

II. That as the work of an acknowledged practical surveyor, since deceased, respecting the matter in controversy, it is admissible as original evidence ; and

III. That it is admissible as an ancient paper, found among the muniments of title of the land of the plaintiff below, and connected with the value thereof.

The only proof of the connection of Mr. Bayles with the paper objected to, is a letter written by him on the 20th of August, 1805, addressed to a Mr. Ten Eyck, which was produced by the plaintiff, and is as follows : " Sir, I am going from home this morning, and cannot come as you requested. If Colonel Vroom comes to your house to-day, I wish you to let him take height and length of my milldam, and I will pay him my half, if you will pay the other half. I will be home on Saturday.                 JOHN BAYLES."

Assuming that the letter was written to the plaintiff, and that upon its authority, in behalf of Mr. Bayles, he procured Colonel Vroom, who was a practical surveyor, " to take the height and length of the milldam," do those facts make the evidence offered and admitted lawful ? If so, it can only be upon the principle that the acts and sayings of an agent, under certain circumstances, are accounted to be the acts and sayings of the party employing him. It therefore becomes im... ...ut in applying that principle, to have a correct understa... ...ng of its character and extent.

Declarations and doings of a third person, acting in the capacity of an agent, are excepted from the general rule

respecting hearsay testimony.   They are admitted in evidence against the principal, as the representations or acts of the *principal himself,* whom the agent represents, while engaged in the particular transaction to which the declaration or acts refer.   They must constitute a part of the *res gestœ* in the course of his employment about the matter in question ; they must accompany the doing of the business or making the contract, and must be within the scope of the delegated authority. *Paley on Agency,* 267 ; *Fairlie* v. *Hastings,* 10 *Ves., Jun.* 123 ; *Thallhimer* v. *Brinkerhoof,* 4 *Wend.* 394 ; *Westcot* v. *Bradford,* 4 *Was. C. C. R.* 500 ; and many other authorities.

1 *Phil. on Evidence,* 82, *New York edition of* 1823, " The declarations of an agent must be confined to such statements as are made by him either at the time of his making an agreement, about which he is employed, or in acting within the scope of his authority."

The rule admitting the declarations of an agent is founded on the legal identity of the agent and principal, and therefore bind only so far as there is authority to make them.   *Greenl.* §. 113.

In *Gurth* v. *Howard,* 8 *Bingh.,* 451, Chief Justice Tindal remarks, " It is dangerous to open the door to declarations of agents beyond what the cases have already done.   They are evidence not given under oath—are made in the absence of the party to be affected by them,—and frequently brought before a court and jury after long intervals of time.   Evidence of such a nature ought always to be kept within the strictest limits to which the cases have confined them."

In applying the principle to the present case, we find that it will not sustain the ruling of the learned judge at the Circuit.   In the first place, the paper received in evidence had no date, nor did it in any way appear when it was made.   It bore intrinsic evidence of having been made *after* the time when Colonel Vroom measured the dam.   To make an act of Colonel Vroom touching that dam legal evidence against Mr. Runk, the plaintiff should clearly have shown the act to have been a part of the *res gestœ* under the

employment. But supposing that the paper had been made on the day of the measurement, the act was not within the scope of his authority. He was employed to take the height and length of the dam, not to make a certificate or writing of the result of his work, to be placed in the hands of James or of Jacob Ten Eyck. So far as the evidence will permit us to draw conclusions, the proper repository of an admeasurement by him would have been among the papers of Mr. Bayles, the employer. The certificate is nothing more than the assertion in writing of a fact, and "the mere assertion of a fact cannot amount to proof of it, though it may have some relation to the business in which the person making the assertion was employed as agent.

If any fact, material to the interest of either party, rests in the knowledge of an agent, it is to be proved by his testimony, not by his assertions." *Payley on Agency*, 269.

The admissibility of the paper has not been supported upon the first ground taken. Again, was it lawfully admitted as the work or *quasi field book* of a deceased acknowledged practical surveyor, respecting the matter in controversy, as against the alienee of the party who employed him?

At common law, traditionary evidence of ancient boundaries of a public or *quasi* public nature is admitted from the nature and necessity of the case, but upon the principles regulating the use of hearsay testimony, it would be difficult to extend the exception to a case where the fact is particular and not of a public or general interest. *Greenl.* § 145.

The rule of the common law has been broken in upon in some of the United States, and traditionary proof has been admitted in questions of private boundary; but no case has been cited wherein the salutary rule has been so far relaxed as to legalize evidence of the character of that objected to on the trial of this cause. It does not relate to a boundary. It refers to nothing of a public character. It states particular facts respecting merely private concerns. The citation from 10 *Wend.* 105, does not support the plaintiff's proposition. The boundaries in that case were of a *quasi*

public character; they referred to the survey of a part of a township, embracing thousands of acres of land. A claimant of a large portion of the property made a survey, and run a particular line dividing the township, and immediately thereafter sold lands upon the line thus run by him, and among others to the defendant in that cause, who entered in possession and began his clearings.

The plaintiff claimed that the line thus run was inaccurate, and that the defendant was in possession of about ten acres of his land.

Upon the trial, the defendant, for the purpose of showing an acquiescence by the plaintiff in the line under which he held, offered to prove that a surveyor, who was then dead, and who had been employed by him or in his behalf, had said that he had examined the line first run, and found it to be as near right as two different surveyors would likely get it; that he had assumed it to be correct, and had allotted the north half of the town accordingly, and had made a field book and map of the survey, and had reported his proceedings to his principal, and had received payment for his services. These declarations were made immediately after the completion of the work.

This testimony was received by the court, not because it was the act of a deceased, skillful surveyor, but because it was the act of a duly constituted agent, within the scope of his authority, and hence considered as the act of the plaintiff.

The paper offered in the present case was not legalized on the second ground taken by the plaintiff below. Nor had it any validity as a certificate. Colonel Vroom was not then acting in an *official station*. It was, at most, the mere statement in writing of a matter of fact by a private person. The calling it a certificate cannot change its character, or clothe it with official solemnity.

The last ground upon which its admissibility was put, respected its age, as an ancient muniment of title, or rather purporting to constitute a *part of the transactions* accompa-

nying the transfer in severalty of the title and possession of the land flowed to the plaintiff.

The value of such testimony depends mainly on the fact, that the document offered was cotemporaneous, at least, with the act or event to which it refers, and it must purport to be a part of the transactions to which it relates, and not a mere narrative of them.   *Greenl.* § 141.

The paper now under examination possesses none of the requisites of such an ancient document.   It does not purport to be a part of the acts of Colonel Vroom while employed for Mr. Bayles, but is at the most a certified copy of the narration of some of those acts, made we know not when.

The testimony was inadmissible under every view which can be taken of it, and the judgment rendered upon the postea must, for that error, be reversed.

The error assigned upon the record respects the insufficiency of the declaration.   It has been insisted, that it is contradictory in itself, and does not disclose a good cause of action.   The plaintiff has contented himself with the employment of a single count for disclosing his complaint in legal form, and if it be radically defective, the judgment rendered upon it cannot be supported.

The objection is directed against the construction of the pleading.   It is insisted that the expressions are inconsistent with each other, and that the qualification "until the obstruction hereinafter mentioned," cannot apply to the averment in the present tense, of the running of the water.   It may be true, that in testing the frame of the declaration, by the strict rules of grammatical construction, it might be found to be obnoxious to just technical criticism.

I have not, however, reached the conclusion, that the pleading is insufficient to support a judgment.

I am the more satisfied with this result, because the attorney for the defendant has pleaded the general issue, followed the plaintiff through a trial, suffered judgment to be rendered without seeking to avert it, and has now for the first time upon the common error assigned, presented the

objection to the notice of the attorney for the plaintiff. Although a court of error upon the case presented before them, may, upon the common error assigned, reach a radical defect in the narration, yet the alleged insufficiency relied on by the plaintiff in error has not been made sufficiently apparent to call upon this court to reverse the judgment on that ground.

Let the judgment be reversed upon the other grounds which have been determined to be well taken.

Judgment reversed.

*For Reversal*—Judges ARROWSMITH, HUYLER, POTTS, CORNELISON, OGDEN, RISLEY, and VALENTINE.

*For Affirmance*—None.

SEE *Ten Eyck* v. *Runk*, 5 Dutch. 513.