10 N.J. Super. 82 (1950)
76 A.2d 697
NETTIE HOLLANDER, PLAINTIFF-APPELLANT,
v.
SMITH & SMITH, AND OTHERS, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 18, 1950.
Decided November 10, 1950.
*84 Before Judges JACOBS, BIGELOW and JAYNE.
Mr. Bernard Freedman argued the cause for the appellant (Messrs. Koehler, Augenblick & Freedman, attorneys).
Mr. Joseph Coult, Jr., argued the cause for the respondent, Smith & Smith.
*85 Mr. Jerome C. Eisenberg argued the cause for the respondents, Robert M. Taafe and John B. Hannon (Mr. Samuel D. Williams, attorney, and Mr. Israel Spicer, on the brief).
The opinion of the court was delivered by BIGELOW, J.A.D.
The plaintiff, a widow in her late 60's or early 70's, brings this action against Smith & Smith, a corporation, and its servants, John B. Hannon and Robert M. Taafe. She demands compensation for injuries which she suffered allegedly through the negligence of the defendants. Pursuant to the jury's verdict, judgment was entered in favor of the defendants, and she appeals.
Appellant was suffering from a serious illness. Her physician, Dr. Simon, decided to send her to Beth Israel Hospital and arranged with Smith & Smith, who operate an ambulance service, to take her there. Taafe and Hannon went to her home with the ambulance and moved her to the hospital. There, upon inquiry, they were told to take her to room 519. They then carried her on a canvas stretcher from the ambulance to the receiving room, where they laid the canvas stretcher, with the plaintiff, on a wheel stretcher and started rolling the plaintiff to her room. As they were passing along the corridor, suddenly she fell from the stretcher to the floor and was severely injured. Without further introduction, let us consider the grounds which are urged for reversal.

DISCOVERY BEFORE TRIAL.
The plaintiff applied, pursuant to Rule 3:34-1, for an order requiring Smith & Smith to permit plaintiff to inspect, before trial, statements that Taafe and Hannon had given to Smith & Smith's insurance carrier concerning the accident which was the basis of the suit. The denial of the motion is presented as a ground for reversal of the judgment. The affidavit which supported the motion did not show that the statements were in the possession of defendants, but only that they had been given to the insurance company. Whether they should be considered to be within the defendants' control, we *86 do not attempt to decide. See, however, Hickman v. Taylor, 329 U.S. 495; 67 S.Ct. 385 (1947). Respondent argues that the statements fall within the category of those obtained in anticipation of litigation and in preparation for trial and so were privileged under Rule 3:26-2. Whether or not the statements were strictly within the privilege, we consider that denial of the application was proper. While most of Rule 3:26-2 is taken from the federal rules, the last sentence seems to be based on Hickman v. Taylor and the opinions in that suit fully justify the action of the trial court in the present case. The appellant showed little or no need for production of the documents. She was at liberty to take the depositions of Taafe and Hannon. They actually testified at the trial. Seemingly the only benefit appellant might derive from a perusal of the statements which they had made to the insurance company was ammunition for cross-examination. That was insufficient to require the granting of her motion.

RULINGS ON EVIDENCE.
Attached to the wheel stretcher  or to the mattress which was on top of it  was a canvas belt which might be buckled around the patient so that the patient would not roll off the stretcher. The principal item of negligence charged against the defendants was their failure to strap plaintiff to the stretcher. In order to prove a standard of care, plaintiff's counsel asked Dr. Bernstein, a physician who practices at Beth Israel, and Dr. Somberg, a neurosurgeon, whether or not it was common practice, in transporting patients on such stretchers, to secure them with the belt so they would not fall off. Objections to the question were sustained on the ground that the custom or practice was immaterial. This ruling of the trial court seems to us erroneous. In Belleville Stone Co. v. Comben, 61 N.J.L. 354 (Sup. Ct. 1898); affirmed, 62 N.J.L. 449 (E. & A. 1898), proof of quarry methods was held proper. And in Deschamps v. L. Bamberger & Co., 128 N.J.L. 527 (Sup. Ct. 1942); affirmed, 129 N.J.L. 517 (E. & A. 1943), evidence was received "respecting *87 the use of mats on the floor of the vestibules in similarly constructed places in the vicinity." And generally see Annotation in 137 A.L.R. 611. An important question for the jury was whether, under all the circumstances of this case, the defendants' failure to fasten the safety belt constituted a failure to use the care which a prudent person would have displayed. To aid the jury in finding the answer, evidence as to the general usage was admissible and so the objection should have been overruled.
The plaintiff took the deposition of Mr. Guinney, vice-president and general manager of Smith & Smith. He said that when Taafe and Hannon returned from the hospital, they told him of the accident. "I checked with them." "We discussed it." The trial court instructed the jury that the oral statements so made by Hannon and Taafe were not evidential as against Smith & Smith but only against the individual defendants. In our opinion, this was error. Statements of an agent are not evidence against his principal unless made in the course of the business entrusted to him. The statement, even of a general agent, although relating to the business of the principal, is inadmissible unless the statement itself is made in execution of the agency. Barcello v. Biel, 137 N.J.L. 606 (E. & A. 1948). But words spoken in pursuance of the duty of an agent, whether he be general or special, can be proved. Arenson v. Skouras Theatres Corp., 131 N.J.L. 303 (E. & A. 1944). It is often said that such a statement is admissible only if the transaction to which it relates is pending at the time the statement is made. See 31 C.J.S., Evidence, § 343. Runk v. Ten Eyck, 24 N.J.L. 756 (E. & A. 1853). But this view is not sound; it stems from a confusion of the rules relating to res gestae with those concerning admissions against interest. Or from the fact that generally a statement made by an agent after the close of the transaction is outside the boundaries of his agency. See Wigmore, Evidence, § 1078. The report by the ambulance attendants to the general manager and their answers to his questions, were clearly given in the course of their duty *88 and were evidence against the corporation. But the ruling was not prejudicial and a ground for reversal, for everything that Taafe and Hannon told Mr. Guinney, according to his deposition, was conceded by Smith & Smith to be true.
The objections urged to other rulings in respect to the admission of evidence, appear to be without merit.

THE CHARGE TO THE JURY.
The court declined to charge:
"When, through any instrumentality or agency under the management or control of the defendants, or their employees, there is an occurrence injurious to the plaintiff, which in the ordinary course of things, would not take place if the persons in control were exercising that degree of care which is imposed by law, as heretofore and hereinafter charged, the occurrence itself, in the absence of a reasonable explanation by the defendants, affords prima facie evidence that there was a want of due care, and the defendants may be held liable on that showing alone."
That is a correct statement of law. Mannon v. Odd Fellows, 97 N.J.L. 215 (E. & A. 1922). Courts have taken an expression used by Chief Baron Pollock in Byrne v. Boadle, 2 H. & C. 722; 159 E.R. 299 (Ex. 1863), res ipsa loquitur, and starting there have developed a "rule" that states a method of assessing circumstantial evidence in negligence cases. "The circumstances may be such that a reasonable man could not draw an inference of negligence or of causation, or that reasonable men could properly either draw or not draw such an inference; or that such inference is required if no further evidence is introduced. There is nothing peculiar in the situations in which the phrase is used, except the paucity of evidence." W.A. Seavey in 63 Harv. L.R. 643. Most of our cases on res ipsa loquitur deal with the effect on the total situation of the presence or absence of some particular circumstance, such as the defendant's control, or lack of control of the instrument that caused the injury. If it had been a bag of sand that fell off the wheel stretcher, the inference would be reasonable that it had not been placed on *89 the centre of the stretcher, or else that the stretcher moved jerkily and not smoothly along the hall, and that those in charge were negligent. But in the actual circumstances of the case before us, an equally permissible inference is that some movement of the plaintiff herself may have precipitated her fall. While she was very sick and weak, it does not appear that she was unconscious or unable to move. Her daughter, who drove to the hospital in the ambulance with her, testified that she talked to her mother on the way to the hospital. Another daughter, who was at the hospital that morning, testified that plaintiff screamed as she fell from the stretcher. Or the plaintiff, though unconscious, by some involuntary, spasmodic movement, may have caused her own fall from the stretcher. Of course, the jury might find that ordinarily careful men would have anticipated some movement by plaintiff and would have guarded against it. Even so, the rule which the court was requested to charge, was not applicable to the case, for plaintiff's fall from the stretcher was not, of itself, prima facie proof of negligence. The request was properly denied. McKinney v. Public Service, etc., Co., 4 N.J. 229 (1950).
The court declined to charge that Smith & Smith is a common carrier and that, as such a carrier, it owed to its passenger, the plaintiff, a high degree of care. "Common carriers of passengers are those who undertake to carry all persons indifferently who apply for passage. To constitute one a common carrier of passengers, it is necessary that he hold himself out to the public as such." Schott v. Weiss, 92 N.J.L. 494 (E. & A. 1918). "The test to be applied is whether the complainant by its methods of soliciting and conducting its business has held itself out to the public as a common carrier of passengers for hire." Broadway Auto Livery v. State Board, 158 A. 375 (R.I. 1932). The facts relating to Smith & Smith's ambulance service were undisputed. The firm had been in the business since 1905; they advertised by distributing among hospitals and doctors, memorandum pads on which was printed "Smith & Smith, Private Ambulance *90 Service. Bigelow 3-2123." In the instant case, Dr. Simon arranged for the ambulance by telephone. We may infer from several bits of testimony that the ambulance, or ambulances, are kept in defendant's garage, except when out on some call. The defendant charges regular, set prices. Mr. Guinney, the general manager, answered in the affirmative the question, "If anybody in Newark were to call you up for ambulance service, if you had an ambulance and the man to run it and it wasn't a contagious or infectious case, you would send the ambulance?" He further testified that he considered that his company was conducting a private ambulance service, "Each call we receive is a private transaction," and that they reserved the right to reject specific calls.
Though the question is not without difficulty, it is our opinion that the evidence would not have justified a finding that Smith & Smith was a common carrier. The words of the late Justice Holmes, with respect to a taxi service operated from a garage, are pertinent. "However it may have been in earlier days as to the common callings, it is assumed in our time that an invitation to the public to buy does not necessarily entail an obligation to sell. It is assumed that an ordinary shopkeeper may refuse his wares arbitrarily to a customer whom he dislikes, and although that consideration is not conclusive, it is assumed that such a calling is not public as the word is used. In the absence of clear language to the contrary it would be assumed that an ordinary livery stable stood on the same footing as a common shop, and there seems to be no difference between the plaintiff's service from its garage and that of a livery stable." And the court held that the appellant in that case, in respect to its cab service operated from its garage, was not a common carrier, operating an agency "for public use for the conveyance of persons * * * for hire." Terminal Taxicab Co. v. Kutz, 241 U.S. 257, 36 S.Ct. 583 (1916).
Cases involving ambulances are Leete v. Griswold Post, 158 A. 919 (Conn. 1932), and Merchants Transfer, etc., Co. v. Gates, 21 S.W.2d 406 (Ark. 1929). See also concerning *91 a lighter, The Wildenfels, 161 Fed. 864; 89 C.C.A. 58 (1908). Truckman, Faucher v. Wilson, 38 A. 1002 (N.H. 1895). Liveryman, Stanley v. Steele, 60 A. 640; 68 L.R.A. 561 (Conn. 1905). Auto livery, Haddad v. Griffin, 142 N.E. 74 (Mass. 1924). Elevator, Edwards v. Manufacturers' Bldg. Co., 61 A. 646; 2 L.R.A.N.S. 744 (R.I. 1905). Smith & Smith did not hold itself out as a common carrier; it was a private carrier only.
We have considered the other points argued and find no error in the matters complained of. The judgment must, however, be reversed because of the rejection of evidence of whether or not it was usual to strap patients to the stretcher.