Oscar **CEDZIWODA**, Appellant,

v.

**CRANE–LONGLEY FUNERAL CHAPEL,**
Appellee.

No. 14853.

Court of Civil Appeals of Texas.

Dallas.

Nov. 12, 1954.

Rehearing Denied Dec. 10, 1954.

Harold B. Berman and Donald L. Gould, Dallas, for appellant.

Thompson, Knight, Wright & Simmons, Pinkney Grissom and David M. Kendall, Jr., Dallas, for appellee.

YOUNG, Justice.

Appellant as plaintiff in trial court has sued defendant Funeral Home, a Texas corporation, for damages growing out of personal injuries suffered by him while riding in defendant's ambulance. The said vehicle of defendant, at the same time, was transporting a sick person (Miss Coble) from the Medical Arts Building to St. Paul's Hospital and on the way became involved in a collision with another car. At close of testimony adduced by plaintiff to a jury, defendant interposed a motion for peremptory instruction, which, upon hearing, was sustained and judgment rendered that plaintiff take nothing. The appeal has followed in due course.

First to be noted are findings of fact and conclusions of law made and filed by the court at instance of appellant; a procedure appropriate only to nonjury trials, Rule 296, Texas Rules of Civil Procedure. In this, a case going off on peremptory instruction, we are duty-bound to consider appellant's contention that issuable facts exist for jury determination *in light of the record,* without reference to these findings. Farr v. Kirby Lumber Corp., Tex.Civ.App., 203 S.W.2d 815; Cox v. Rhodes, Tex.Civ.App., 233 S.W.2d 924.

In summary, plaintiff, in amended original petition, alleges: That on July 23, 1952 Miss Bernice Coble was a patient at Samuell Clinic and on orders of her physician was being transferred to St. Paul's Hospital, and although bedridden, her case was not of an emergency nature; plaintiff upon request of Miss Coble consenting to accompany her on such trip; that "defendant maintains and operates a fleet of ambulances or other vehicles which it makes available to the public for hire to trans-

port said bedridden patients and their attendants from one place to another," one of its ambulances responding to the call; being hired to transport both plaintiff and Miss Coble to the hospital and undertaking to do so; that defendant was a common carrier as a matter of business and for compensation; on the trip plaintiff taking a seat in the ambulance reserved for passengers, in no way contributing to the collision which followed at Bryan and Pearl Streets. Numerous particulars of negligence were alleged; for example, failures as regards lookout and warning signals; also excessive speed, driving as an emergency vehicle in violation of Dallas Traffic Code or under circumstances where a reasonably prudent person would not have done so, etc. Damages sought were in amount of $8,058.25, for injuries allegedly serious and from which he still suffers.

Defendant in answer pled that on the occasion in question it sent an ambulance to Medical Arts Building in response to a call for transportation of a patient (Miss Coble) to St. Paul's Hospital; being informed that her condition was serious and that time was of the essence; that present in said ambulance were a driver and helper, trained and competent to drive said vehicle and care for patients carried therein, plaintiff entering same solely of his own volition, benefit and convenience; defendant receiving no compensation therefor and expecting none; that in consequence, the carriage of plaintiff was a mere gratuity, making him a guest within meaning of art. 6701b, Vernon's Annotated Civil Statutes, and not entitled to recover on grounds of ordinary negligence as alleged; further that the movement of a third party automobile was the sole proximate cause of said collision and that the role of plaintiff on the occasion was that of a volunteer or licensee who had assumed the risk of riding in an ambulance engaged, as it was, on an emergency mission.

Material to the points advanced for reversal is the testimony of plaintiff, also of Leonard Longley, Vice President, defendant company; in substance, as follows:

(Oscar Cedziwoda) That on the particular afternoon Miss Coble had gone to the Medical Arts Building, driving her own car, phoning plaintiff from Samuell Clinic that she was being ordered to St. Paul's Hospital, requesting that he go along; that on arrival, Miss Coble was lying on a roll-away bed, appearing normal, without pain; admitting on cross-examination, however, that her condition was later determined to be serious; that she decided to take an ambulance to the hospital and requested him to call one, which he did through a nurse; that there was no rush to get Miss Coble to the hospital, the ambulance arriving some thirty minutes later, plaintiff introducing himself to defendant's employees in charge, telling them he was going to ride with her. That two small metal seats were located within the ambulance, alongside the patient, one of which he occupied; that defendant's vehicle commenced traveling at an excessive speed through heavy traffic, running a red light at Bryan and Pearl Streets and into a car going south.

Mr. Longley, Vice President, defendant corporation, testified in effect that they were in the business of transporting patients *upon call* from one section of Greater Dallas to another for a charge of $5 per patient; that a friend or relative was permitted to accompany the patient, charge being made for the latter only; such third person rendering no service to defendant, the ambulance having a driver and attendant for all assistance necessary; that the vehicle was equipped with two seats for this kind of accommodation, on numerous occasions carrying along a third party who desired to ride, billing the patient only for the trip; that the particular call was for ambulance service to Miss Coble at the Medical Arts Building for removal to hospital, defendant not knowing who, if any one, was to accompany her.

The following points are advanced as grounds for reversal of cause: Error of the trial court (1) "in using the Texas Guest Statute to defeat the plaintiff's cause of action because the transaction involved

here was obviously not one intended to be covered by this statute"; (2) "in holding that the statute applied to the plaintiff because the plaintiff clearly was not a guest under any interpretation of the Texas Guest Statute"; and (3) "in granting a directed verdict for defendant because the plaintiff was clearly an invitee of the defendant and not a mere licensee." The trial court has properly held, argues appellee in reply brief, (1) "that the operator of an ambulance service is not a public carrier as that term is used in the Texas Guest Statute"; further, that the court correctly instructed a verdict for defendant, (2) "since appellant failed to plead and prove sufficient facts to establish that appellee was a public carrier and that appellant's alleged cause of action was not barred by the Texas Guest Statute"; (3) "since the appellant failed to plead and prove sufficient facts to establish that there existed between him and the appellee the relationship of public carrier and passenger and that his alleged cause of action was not barred by the Texas Guest Statute"; (4) "since the uncontroverted evidence showed that appellant was a guest of appellee, as that term is used in the Texas Guest Statute, and was not entitled to recover for ordinary negligence"; and (5) "since the uncontroverted evidence showed that appellant was a mere licensee."

Article 6701b, V.A.C.S., generally known as the Texas Guest Statute, provides: "Section 1. No person transported over the public highways of this State by the owner or operator of a motor vehicle as his guest without payment for such transportation, shall have a cause of action for damages against such owner or operator for injuries, death or loss, in case of accident, unless such accident shall have been intentional on the part of said owner or operator, or caused by his heedlessness or his reckless disregard of the rights of others. Sec. 2. This Act shall not relieve a public carrier or any owner or operator of a motor vehicle while the same is being demonstrated to a prospective purchaser, of responsibility for any injuries sustained by a passenger being transported by such public carrier, or by such owner or operator. Acts 1931, 42nd Leg., p. 379, ch. 225." Here the law questions posed by the parties may be considerably narrowed: Appellant asserting that his ambulance ride was an integral part of a commercial transaction and hence not governed by Section 1 of the Act. And, if not so, that he was an invitee of defendant, a public carrier, under sec. 2 above, his injuries resulting from its failure to exercise ordinary care on the occasion in question. Defensive propositions naturally reflect a directly contrary view.

 Clearly, plaintiff was a gratuitous rider in defendant's ambulance on the described occasion within contemplation of the Texas Guest Law; the commercial aspect of the event relating only to the "patient" from whom payment was expected. In general course of testimony plaintiff had stated that it was for the benefit of Miss Coble that the ambulance trip was initiated, he having no reason for going to the hospital other than to accompany her; simply announcing to defendant's employees that he was taking passage, they answering "All right." When an issue is raised in this respect, importance attaches to the plaintiff's purpose in making the trip. Johnson v. Smither, Tex.Civ.App., 116 S.W.2d 812. The status of guest adheres where a rider is merely recipient of voluntary hospitality on part of car operator; Rowan v. Allen, 134 Tex. 215, 134 S.W.2d 1022; Linn v. Nored, Tex.Civ.App., 133 S.W.2d 234. And to remove a case from the Guest Statute, the benefit conferred must be of a nature definite and tangible. Franzen v. Jason, Tex.Civ.App., 166 S.W.2d 727 (writ ref.); Henry v. Henson, Tex.Civ.App., 174 S.W.2d 270 (writ ref.).

It is argued that appellant, invited to make the trip by Miss Coble from whom defendant expected payment, the riding was a part of the commercial transaction rather than a gratuity. Like contention

was made in Rushing v. Mulhearn Funeral Home, La.App., 200 So. 52, 56, where the plaintiff helped load his sick friend in the vehicle and rode inside during the trip, allegedly to administer to the patient's needs. During passage, the ambulance door opened and plaintiff fell out. The appellate court, affirming the trial court's dismissal of cause on exception as stating no cause of action, said: "It is plaintiff's contention here that he was a pay passenger in the ambulance. The allegations of the petition fail to disclose such a contract. * * * It is not alleged that the contract of hiring included passage for plaintiff, and the allegation of consent on the part of the ambulance driver negatives that idea. Plaintiff was nothing more than a licensee or guest in said ambulance * *· *." See also Morales v. Employers' Liability Assurance Corp., 202 La. 755, 12 So.2d 804. The principle followed by all Texas decisions on the point is well stated in 60 C.J.S., Motor Vehicles, § 399(1), pp. 983, 984: "The benefit which must be present to remove the rider from the category of guest imports some contractual relation between the parties to which such benefit is referable; and where the transportation given to the passenger is not directly paid for, as in the case of a passenger for hire, it must confer a benefit on defendant in the performance of something in which defendant has an interest. Furthermore, the benefit which defendant derives must flow from, and depend on, the transportation of the person injured, and the mere fact that defendant derives some benefit, pecuniary or otherwise, from making the trip is insufficient where such benefit would have accrued without the transportation of the person injured."

 Neither do we consider that the instant facts bring defendant within the exception of "public carrier," art. 6701b, sec. 2; a term not defined in the statute but treated by both parties as synonymous with "common carrier"; the outlined ambulance service making of defendant no more than a special or private carrier. The distinction between a common or public carrier and a private carrier is drawn in 4 Blashfield Cyclopedia of Automobile Law and Practice, sec. 2141, page 7, and sec. 2141.5, page 11: "The criterion by which to determine whether one who furnishes motor transportation to other persons as a commercial proposition, or for a price, is a common carrier of passengers is whether he holds himself out to the public as engaged in the business of transporting persons for hire, and as ready to receive and transport all fit and suitable applicants for passage, to the extent of his facilities, who are ready to compensate him for such service. * * * Where one is not engaged in the transportation of persons as a regular and constant business or as a public employment, and does not hold himself out as ready to carry all persons who may choose to employ him, but agrees, by way of special undertaking, to transport persons for hire, or even gratuitously, he is not a common carrier, but is a special or private carrier." Such is the test applied in Texas. See Burnett v. Riter, Tex.Civ.App., 276 S.W. 347, 349, holding: "A common carrier is one who engages in the transportation of persons or things from place to place for hire, and holds himself out to the public as ready and willing to serve the public, indifferently, in the particular line in which he is engaged. * * * A common carrier is one who, by virtue of his calling and as a regular business, undertakes to transport persons or commodities from place to place, offering his services to all such as choose to employ him and pay the charges. * * * The real test of whether one is a common carrier is whether he holds himself out that he will, so long as he has room, carry for hire persons or goods brought to him for that purpose." Explicit in above definition of common carrier is its engagement to serve the public without discrimination; "'and if they (carriers) refuse to perform their obligation in this respect, they are liable to respond in damages.'" Automobile Ins. Co. of Hartford, Conn. v. Cochran, 262 Mich. 605, 247 N.W. 755, 757, quoting from 4 R.C.L., p. 550. The instant record is devoid of evidence suggesting any such public duty on part of defendant; its described ambulance serv-

ice being dependent rather upon special contract. The particular transportation offered patients, according to Mr. Longley, was from "Any of the hospitals to their home, anywhere in the City limits of Greater Dallas or from their homes to any of the hospitals in the City limits of Greater Dallas." The service usually followed a phone call, Longley testifying further with respect to charges per trip: "Q. Well, when you sent that ambulance out for Miss Coble, you didn't know who was going to ride in it, did you, other than Miss Coble? A. No, we didn't. We were after Miss Coble.

"Q. You knew that you were going to get five dollars for that trip, didn't you? A. No, sir, we did not; we don't ever know whether we are ever going to collect for them, when it comes to that, sir.

"Q. Well, I mean you knew that you were going to bill her for it, didn't you? A. Well, we can render a bill, yes, sir"; stating that his company was not in the taxicab business.

The status of an ambulance as a public carrier has not been passed on by Texas courts, and but rarely in other jurisdictions. Appellant relies, however, upon two cases in support of his points: First, Leete v. Griswold Post, 114 Conn. 400, 158 A. 919, 920, where it was held that the American Legion Post operation of an ambulance was as a public carrier upon showing that the vehicle was maintained for public use and that, although no charge was made for such use, there was a reasonable prospect that, out of gratitude for such transportation, "the plaintiff would later make a donation to the Post for the benefit of the fund devoted to the maintenance of the ambulance"; concluding, however, that Leete was not a guest. It is argued that great weight should be accorded this holding; Connecticut being the source of our own 1931 Guest Law. Leete's appeal was decided in 1932 and therefore not controlling of our construction of the term "public carrier"; and while Connecticut interpretations of the statute are entitled to due respect, where there is no Texas decision in point, it occurs to us that the question of whether a particular occupation is that of a public carrier is one for determination by Texas courts in light of our own well settled definition of the term; see Burnett v. Riter, supra. Appellant's second citation is Merchants' Transfer & Warehouse Co. v. Gates, 180 Ark. 96, 21 S.W.2d 406, 407, where intervener undertaking company was concededly a motor vehicle user of state roads and highways for compensation and subject to regulation as other motor vehicles; the trial court further finding that its "operators are properly charged with and pay 'for hire' licenses issued by the state highway department, and * * * licensed as public carriers by the city of Little Rock." Suffice to say such is not the present state of facts.

On the other hand, in Hollander v. Smith & Smith, 10 N.J.Super. 82, 76 A. 2d 697, 21 A.L.R.2d 902, a plaintiff was injured while being transported to a hospital by defendant's ambulance; the legal question arising of whether defendant was to be held to the high degree of care required of common carriers rather than to the lesser duty of ordinary care. The trial court declined to charge that defendant owed plaintiff passenger a high degree of care, with appellate court affirmation that "Smith & Smith did not hold itself out as a common carrier; it was a private carrier only." In Pemberton v. Lewis, 235 N.C. 188, 69 S.E.2d 512, the party injured had contracted to pay for an ambulance which was to transport his son to a hospital. He was riding in the ambulance much as plaintiff was doing here, and while so riding, fell out. The North Carolina Supreme Court held on the record before it that defendant was operating as a private contract carrier, owing only the duty of ordinary care. Apparently, no question of a Guest Statute was involved.

■ Obviously the provisions of sec. 2, 6701b, were intended to apply to those persons and concerns which had theretofore

been, and were for all other purposes, public carriers; and in absence of legislation on the subject, it is our conclusion that, at least under the circumstances here presented, defendant's operation of an ambulance service cannot be characterized as that of a public carrier (*See Footnote).

Judgment of the trial court is affirmed.