Alphonse NAPOLITANO,
Appellant,

v.

EASTERN MOTOR EXPRESS, Inc.

No. 12161.

United States Court of Appeals
Third Circuit.

Argued June 3, 1957.

Decided July 3, 1957.

Anthony P. LaPorta, Hoboken, N. J. (Lawrence E. Florio, Hoboken, N. J., Abraham M. Fisch, New York City, on the brief), for appellant.

Nicholas Conover English, Newark, N. J. (McCarter, English & Studer, Verling C. Enteman, Le Roy H. Mattson, Newark, N. J., on the brief), for appellee.

Before BIGGS, Chief Judge, and GOODRICH and KALODNER, Circuit Judges.

GOODRICH, Circuit Judge.

This is a diversity of citizenship suit based on New Jersey law for personal injuries brought by Alphonse Napolitano against Eastern Motor Express, Inc. The accident in which the plaintiff was injured took place while a truck was being unloaded at the steamship pier in Hoboken, New Jersey. At the conclusion of the plaintiff's case the court

dismissed on motion by the defendant. In this, the plaintiff's appeal, we therefore take his evidence as true.

There are two questions in this case. One is whether the evidence submitted by the plaintiff is sufficient to carry a case to the jury on the issue of defendant's responsibility for acts of its driver. The other is an alleged error by the trial judge in refusing evidence of custom. The points will be considered in order.

█ Plaintiff was employed by International Terminal Operating Co. ("ITO"), an independent stevedoring contractor. On the morning of the 16th of November, 1954, the driver of one of the defendant's trucks brought a load of metal articles incased in wooden cases to Pier 15, Hoboken, New Jersey. Plaintiff and some of his ITO fellow employees were told by their ITO superior "to go and assist the driver in unloading the truck."

The unloading began. Several of the cases had been removed by pulling them to the rear end of the trailer and removing them from the trailer with a "hi-lo," or fork lift tractor. In the middle of the truck at the forward end there was a box described by counsel for the plaintiff as shaped like a domino. It was 15 feet long, 8 to 12 inches wide, 4 feet high, and weighed 1500 to 1800 pounds. Two longshoremen assisting the truck driver each protested against the driver's method of moving this case to the unloading end of the trailer. Each of them wanted it put down flat, to move it with the 15 foot by 4 foot surface downward. The driver insisted that they could manage it standing upright the way it was, which left it riding on the surface 15 feet long and 8 inches wide. As the load was being dragged by a hi-lo to the rear end of the truck where another hi-lo

would pick it up it swerved in some way severely hurting the plaintiff.

Has he stated a prima facie case of negligence in the above case summarized? If he has, is anything further necessary in a case which could go to the jury? We do not think it can be seriously questioned that if the driver himself were being sued, the plaintiff would have shown a case which would have justified a verdict against him if the jury chose to find it in the absence of defendant's evidence. This box containing metal objects was heavy and unwieldy, obviously a ticklish kind of thing to get safely off a truck. There was a direct conflict of ideas as to how it should be handled. The driver insisted on his way against the protest of two experienced longshoremen. We think that this presents sufficient possibility of difference of opinion as to a conclusion of negligence so that the trier of fact could well pass upon it.

The point was made in briefs and argument that the driver lacked the authority to direct the unloading and thus the doctrine of respondeat superior is inapplicable. It was admitted in pre-trial that the driver worked for defendant. It was not proved, nor was it the theory of the case, that plaintiff and his fellow ITO employees were lent servants of defendant. The record is far from clear on the exact relation between the pier operator, the independent contractor (ITO) and the defendant. Specifically it is not free from doubt who engaged ITO to unload the truck and who was responsible for supervising the process. But there is evidence in the record to support a finding that defendant's driver in fact undertook to direct the operation and that three ITO employees working with him acknowledged his leadership.[1]

1. Plaintiff testified: "I was told to go and assist the driver in unloading the truck." On the point of who told the hi-lo operator to pull the case, an ITO employee who was working with plaintiff testified: "A. The truck driver told him to go ahead, not me.

"Q. The truck driver tells him to pull?

"A. The truck driver is the boss, he tells * * *."

And later he said that the ITO superior, "assigns us to the job, and then the truck driver tells us what case—"

The driver had placed himself in such a relation to plaintiff that he would have been liable personally if the jury found negligence on his part which caused plaintiff's injury. Cf. Restatement, Torts § 323(1) (1934); Bascho v. Pennsylvania R. Co., App.Div.1949, 3 N.J. Super. 86, 65 A.2d 613; Nilsson v. Abruzzo, E. & A.1931, 107 N.J.L. 327, 153 A. 486.

■ We do not find any difficulty in ascribing the acts of the driver to the scope of his employment. Cf. Chapman v. Public Service Ry. Co., Sup.1909, 77 N.J.L. 258, 72 A. 36. The Restatement, Agency § 35 (1933), gives us the key here. The section reads as follows:

"Unless otherwise agreed, authority to conduct a transaction includes authority to do acts which are incidental to it, usually accompany it, or are reasonably necessary to accomplish it."

New Jersey law is in accord. Carlson v. Hannah, 1951, 6 N.J. 202, 78 A.2d 83; Sibley v. City Service Transit Co., 1949, 2 N.J. 458, 66 A.2d 864.

■■ We think that a driver-chauffeur would have as incident to his general duties authority to unload or direct the unloading of his truck. If there is agreement or directions to the contrary that is a matter for explanation by the employer. Furthermore, a principal may be bound for his acts where a third party justifiably presumes that the agent had authority because of a "business usages and the nature of the particular business." Price v. Old Label Liquor Co., 1952, 23 N.J.Super. 165, 169, 92 A.2d 806, 808; Jacob Ruppert v. Jernstedt & Co., E. & A.1936, 116 N.J.L. 214, 217, 182 A. 900, 901; Restatement, Agency § 36 (1933). Here the evidence tends to show a custom for ITO employees to help truck drivers. We think it is not too much to expect a trucking company to be presumed to know the custom of the pier to which they send their truck with a load of merchandise. Our conclusion is that, subject to whatever explanation the defendant may bring forward, the trier of the fact should have been allowed to pass on the question of agency and it was incorrect to take it from the jury.

■ The other point in the case concerns the exclusion of evidence of custom. Two longshoremen were asked whether there was a custom in this and other ports in the area with regard to the manner in which crates of this sort were unloaded from trucks. The trial judge excluded the proffered evidence as irrelevant and immaterial and ruled that confusing, collateral and remote issues would be raised in establishing the similarity of circumstances. He told counsel that the refusal to receive the evidence was not based on the form of the question but the substance of what was asked.

■■ While we do not say that this would be sufficient in the absence of anything else in the case to cause reversal, we do think that the learned judge was in error in refusing to receive this testimony. What we are considering here is not to be confused with expert testimony where the expert gives his opinion upon a given matter based upon his experience.[2] This question called for a fact

whereupon counsel interrupted and changed the subject.
Plaintiff and two fellow ITO employees testified that the driver refused suggestions to lay the case down and they acquiesced. Plaintiff's version is typical: "I told the driver that when we get this case out free from the other cases that we should lay it on its flat side because that is the way we always do it. He says no. He says, 'If we do that it will be harder to handle, and I don't want to bother.' So I says, 'If we don't do that we will have to guide the case. Let us lay it on its flat side.' He says, 'No. * * *'"

"So then I heard [the hi-lo operator] holler up to him: 'Hey, driver, how about laying that case down?' He says, 'No. * * *' So the driver and I hooked up the case and the case proceeded * * *."

2. We express no opinion on whether the safe method of moving these cases would have been a proper subject for expert testimony, or whether the witnesses would have qualified as experts.

answer, that is, the customary method of handling these materials if such custom in fact existed. Evidence of custom is habitually received in negligence cases. 2 Wigmore, Evidence § 461 (3d ed. 1940). Sometimes the defendant offers it to show that he conformed to the custom of the trade or business.[3] The rule in such a case is that he may show conformity to such usage although such conformity does not excuse him if the usage is not considered by the trier of the fact to constitute due care. Likewise, the plaintiff may show absence of conformity to custom on the part of the defendant upon the theory that falling below the customary standard tends to show negligence on the part of the defendant.[4] In neither case is the custom conclusive but in either case it is relevant for the trier of the fact to consider. It may be granted that there is a wide measure of discretion left to the trial judge,[5] but such rulings are not totally immune from review.[6]

There are some acts so common or simple that the value of evidence of custom is too slight to be helpful.[7] We do not think that this is such a situation. The case that fell was very heavy and unwieldy. Obviously it was a difficult kind of a thing to unload, and experienced men disagreed as to the safe procedure. The process involved a rope sling, hooks, 2 hi-los and 5 men. We do not think that jurors would know the proper way to perform such an operation as a matter of common experience. Nor can we agree with the trial judge that it would have been difficult or confusing to establish the custom or the similarity of circumstances. Both witnesses were asked about the customary method prevailing in the same port area of moving cases of the same size, shape and weight as the one which fell. Furthermore, if there is any such custom these two men here seemed competent to describe it. One had been in the business for 14 years in Hoboken and nearby ports. The other had 20 years of such experience. They should have been able to tell what they had observed in that time.

The judgment of the district court will be reversed and the case remanded for further proceedings not inconsistent with this opinion.

3. Hoyt v. Central R. R., 3 Cir., 1957, 243 F.2d 840; Hopper's, Inc., v. Red Bank Airport, Inc., App.Div.1951, 15 N.J. Super. 349, 83 A.2d 457.

4. Schillie v. Atchison, T. & S. F. Ry. Co., 8 Cir., 1955, 222 F.2d 810; O'Donnell v. Asplundh Tree Expert Co., 1953, 13 N.J. 319, 99 A.2d 577; Hollander v. Smith & Smith, App.Div.1950, 10 N.J.Super. 82, 76 A.2d 697, 21 A.L.R.2d 902; Deschamps v. L. Bamberger & Co., Sup. 1942, 128 N.J.L. 527, 27 A.2d 3, affirmed on other grounds, E. & A. 1943, 129 N.J.L. 517, 30 A.2d 503; Belleville Stone Co. of New Jersey v. Comben, Sup., 61 N.J.L. 353, 39 A. 641, affirmed per curiam, E. & A.1898, 62 N.J.L. 449, 45 A. 1090.

5. Gonzales v. United Fruit Co., 2 Cir., 1951, 193 F.2d 479; Brigham Young University v. Lillywhite, 10 Cir., 118 F.2d 836, certiorari denied 1941, 314 U.S. 638, 62 S.Ct. 73, 86 L.Ed. 512; Bosze v. Metropolitan Life Ins. Co., 1948, 1 N.J. 5, 61 A.2d 499.

6. Krinog v. Federici, 3 Cir., 1953, 203 F. 2d 203; Edgarton v. H. P. Welch Co., 1947, 321 Mass. 603, 74 N.E.2d 674.

7. Evidence of custom of the following was inadmissible: walking along the highway, Eamiello v. Piscitelli, 1947, 133 Conn. 360, 51 A.2d 912; putting mats on wet floors, Rothstein v. Monette, City Ct. Albany, 17 N.Y.S.2d 369, contra, Deschamps v. L. Bamberger & Co., supra, note 4; loading wood in wagon, Simonds v. City of Baraboo, 1896, 93 Wis. 40, 67 N.W. 40.
But evidence of the following was admissible: safety treads on steps and hand railings in public buildings, Asbury v. Fidelity Nat. Bank & Trust Co., 1937, 231 Mo.App. 437, 100 S.W.2d 946; number of people to ride in coupe automobile, City of Pampa v. Todd, Tex.Civ.App. 1931, 39 S.W.2d 636, reversed on other grounds, Tex.Com.App.1933, 59 S.W.2d 114; parking facing traffic, Reed v. Nashua Buick Co., 1929, 84 N.H. 156, 147 A. 898.
In all of the cases cited except Simonds v. City of Baraboo, supra, the ruling of the trial court was affirmed.