**Sharon LAVALLEE, as Executrix of the Estate of Warren Viau and on behalf of the Beneficiaries of the Estate of Warren Viau, Plaintiff,**

v.

**ALERT AMBULANCE SERVICES, Defendant.**

**Civ. A. No. 92–0705 P.**

United States District Court, D. Rhode Island.

June 2, 1994.

---

William E. O'Gara, R. Daniel Prentiss & Associates, Providence, RI, for plaintiff.

Francis X. Flaherty, Wynn & Wynn, Providence, RI, for defendant.

### MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

This is a wrongful death action brought pursuant to R.I.Gen.Laws § 10-7-1 (1985). Plaintiff is a resident of Rhode Island and defendant is a corporation organized under the laws of Massachusetts. Jurisdiction is vested therefore pursuant to 28 U.S.C. § 1332 (1988) (diversity of citizenship). On January 5, 1990, the deceased, Mr. Warren Viau, was being transported from Newport Hospital in Newport, Rhode Island to a nursing home in Bristol, Rhode Island. Mr. Viau was being transported in an ambulance operated by defendant. During this drive, another vehicle collided headon with the ambulance. Mr. Viau was thrown from the stretcher at the impact and later died from the injuries he sustained during the accident.

Plaintiff alleges that defendant negligently failed to secure Mr. Viau to the stretcher or failed to properly equip the stretcher with the necessary equipment thereby causing Mr. Viau's death.

Currently before this court is the issue of jury instructions, specifically the standard of care owed by the defendant. Plaintiff argues that an ambulance is a common carrier and therefore defendant should be held to the highest standard of care. Defendant argues that, under Rhode Island law, the applicable standard is gross negligence or willful misconduct. For the reasons set forth below, I agree with the plaintiff and find that the defendant is a common carrier subject to the highest degree of care.

### I. Common Carrier

■ Defendant cites the following statutory language as support for its position that gross negligence or willful misconduct is the relevant standard.

> **Immunity from liability.**—(a) No person, licensed and authorized pursuant to this chapter or rules and regulations promulgated pursuant to this chapter, shall be liable for nay civil damages for any act or omission in connection with emergency medical services (EMS) training or in connection with services rendered outside a hospital, unless the act or omission is inconsistent with the level and scope of the person's training and experience and unless the act or omission was the result of gross negligence or willful misconduct.

R.I.Gen.Laws § 23-4.1-12(a). Defendant argues that because Mr. Viau was receiving "services rendered outside a hospital," the gross negligence/willful misconduct standard should apply. However, the statute provides an exception for non-emergency providers. "Private ambulance services which are used solely for the transportation of non-emergency patients shall be exempted from the provisions of this chapter ..." *Id.* at § 23-4.1-13.

. .

.

■ Defendant carries the Town of Tiverton seal on its ambulances and provides the Town with emergency services in the case of multiple calls or patients. Defendant argues that because its services are not used *solely* for non-emergency patients, it does not fall within the exclusion. While defendant may provide emergency services from time to time, I do not believe that such a fact places defendant under the protection of section 23–4.1–12(a). It is apparent from the language of the statute that the legislature intended to shield those persons engaged in the provision of emergency services and exclude from protection those persons who were engaged in the private sector business of transporting patients. As such, in the case of an ambulance service which performs both tasks, I believe a functional approach is the most logical. That is, if the ambulance was engaged in emergency services or is a municipal ambulance providing services outside of a hospital, the gross negligence standard should apply. If, however, the ambulance is part of a private ambulance service and is providing non-emergency transportation at the time, the ambulance is exempted from the statute and the gross negligence standard does not apply. At the time of the accident, the defendant was engaged in the transportation of a non-emergency patient who had paid for the ambulance. *See* Def's Response to Pltf's Third Request for Admissions at 1. Therefore, section 23–4.1–12(a) does not apply and the defendant is not entitled to an instruction on the gross negligence/willful misconduct standard.

■ Defendant also argues that it does not fall within the definition of "common carrier" as set forth in R.I.Gen.Laws § 39–14–1(2). " 'Common carrier' means any person who holds himself out to the general public as engaging in the transportation by motor vehicle of passengers for compensation in a taxicab or in a limited public motor vehicle." *Id.* Both "taxicab" and "limited public motor vehicle" are defined as vehicles which contain a taximeter. Thus, according to defendant, since its ambulances do not contain taximeters, it cannot be a common carrier.

Defendant's argument is without merit. The definition of "common carrier" which defendant cites is found within a chapter entitled "Taxicabs and Limited Public Motor Vehicles." Taxicabs and limited public motor vehicles are clearly not the only two types of common carriers that exist in Rhode Island. *See* R.I.Gen.Laws § 39–2–14 ("[a]ny operator of a taxicab, limited public motor vehicle, bus or other public utility or common carrier"). In fact, many other sections of the Rhode island General laws contain definitions of "common carrier." *See* R.I.Gen.Laws §§ 39–12–2(c) (defining common carrier in the context of motor vehicle property carriers); 39–13–2 (declaring all jitneys to be common carriers); and, 39–11–1(a) (defining common carrier in the context of air carriers). Thus, the fact that defendant does not fall within one isolated statutory definition of common carrier is meaningless.

Defendant also argues that "[i]f the legislature had intended to designate ambulances as common carriers, it could have easily done so." Def's Mem. of Law in Support of Def's Request for Private Carrier Jury Instruction at 2. However, if the Legislature wished to exclude ambulances from the definition of "common carriers," it could also have easily done so. Since the legislature has spoken neither way, I must turn to other sources for assistance.

The state courts of Rhode Island have not had the opportunity to determine whether an ambulance service is a common carrier. A number of other jurisdictions have considered this issue. *See Long v. Illinois Power Co.,* 187 Ill.App.3d 614, 135 Ill.Dec. 142, 152, 543 N.E.2d 525, 535 (1989) ("the modern trend seems to be toward finding ambulances to be common carriers"); *Bricks v. Metro Ambulance Service, Inc.,* 177 Ga.App. 62, 338 S.E.2d 438, 441 (1985) (holding ambulances to be common carriers); *Nazareth v. Herndon Ambulance Service,* 467 So.2d 1076, 1079 (Fla.Dist.Ct.App.1985) (same); *Home Insurance Co. v. Covington,* 255 Ark. 409, 501 S.W.2d 219, 221 (1973) ("the ambulance company was a common carrier within our statutes and cases"); Cheryl Bailey, Annotation,

*Liability of Operator of Ambulance Service for Personal Injuries to person Being Transported,* 68 A.L.R.4th 14 § 3 at 54–59 (1989) (collecting cases). *But see Cedziwoda v. Crane–Longley Funeral Chapel,* 273 S.W.2d 455 (Tex.Civ.App.1954) (holding ambulance service not to be common carrier but rather private carrier); *Hollander v. Smith,* 10 N.J.Super. 82, 76 A.2d 697 (App.Div.1950) (same).

Many of the above cited cases were based on the particular statutory scheme of the state. Since there is no singular definition of common carrier for the state of Rhode Island, I turn to the common law. In *Long,* 543 N.E.2d at 535, the court discussed the distinction between private carriers and common carriers. The court paraphrased the' elements set forth in 13 Am.Jur.2d *Carrier* §§ 1–9 (1964).

> To be a common carrier, one must hold himself out to be: (1) engaged in the business of transport ...; (2) in this case the business must be to transport persons, as opposed to freight; (3) ... there need not be a fixed route or movement between fixed termini; (4) the transport must be undertaken for compensation, although the contract need not be expressed or the rate fixed ...; and (5) the services must be offered to the public generally.

*Long,* 543 N.E.2d at 535. It is clear that the defendant in this case was engaged in the business of transporting persons for compensation. Further, defendant did offer its services to public as evidenced by an advertisement in the yellow pages. *See* Def's Response to Pltf's Third Request for Admissions at 2.

A private carrier is "one who, without making it a vocation, or holding himself out to the public as ready to act for all who desire his services, undertakes, by special agreement in a particular instance only, to transport property or persons for one place to another either gratuitously or for hire.... Private carriers do not undertake to carry for all persons indiscriminately but transport only for those with whom they seem fit to contract ..." 13 Am.Jur.2d *Carrier* § 8 at

565. Defendant argues that it does not carry all persons indiscriminately; rather, it is free to turn away paying customers if it so chooses. I first note that defendant has offered its services to the public at large by way of the yellow pages advertisement. Thus defendant fits, albeit not perfectly, more securely within the definition of common carrier than the definition of private carrier. Further, the court in *Bricks* addressed the very issue of private ambulances services.

> We specifically recognize that in many instances in this state there are ambulances which are not strictly required by law or regulation to serve particular calls, but instead operate independently on a competitive basis.... [T]he ambulance is unique as a carrier having exclusive custody of persons with their property, who are helpless to protect themselves. No individual is more at the mercy of a carrier than a person dying, or ill or injured enough to require carriage. In holding that this kind of ambulance is a common carrier, we decline to discriminate against such a person merely because the ambulance he is forced to ride in was not forced to take him.

*Bricks,* 338 S.E.2d at 441. I can "think of no reasonable basis to impose on ambulances a less stringent duty of care than is imposed on buses and taxi companies." *Nazareth,* 467 So.2d at 1080. In conclusion, I hold the defendant to be a *common carrier* for the purposes of determining the relevant standard of care.

## II. Degree of Care

 It is well established in Rhode Island that common carriers owe the highest degree of care in preventing injury to their passengers. *Ellis v. Rhode Island Pub. Transit Authority,* 586 A.2d 1055, 1060 (R.I. 1991). This duty requires that a "common carrier is bound to exercise towards a passenger the highest degree of care and foresight consistent with the orderly conduct of its business with respect to all matters under its control." *Burke v. United Electric Rys. Co.,* 79 R.I. 50, 83 A.2d 88, 89 (1951). This

standard does not require carriers to use the greatest care that "human ingenuity" can devise. To do so would, in effect, fashion the carrier into an insurer of its passengers. Thus, the common carrier must exercise the highest degree consistent with practical operations, not the highest degree of care imaginable. A carrier must therefore equip its vehicles with the equipment which would provide the greatest degree of protection, provided that such equipment would not interfere with the operation of the business.

In conclusion, I hold Alert Ambulance Services to be a common carrier and subject to the highest degree of care. Defendant's requested jury instructions 5–11, 20–23 are denied. Requested instruction 12 is granted.

SO ORDERED.