OSCAR CEDZIWODA v. CRANE-LONGLEY FUNERAL CHAPEL

No. A-5045. Decided July 27, 1955.
Rehearing overruled November 16, 1955.
(283 S. W. 2d Series 217)

*Donald L. Gould* and *Harold B. Berman,* of Dallas, for petitioner.

The Court of Civil Appeals erred in concluding that the petitioner, plaintiff, was clearly a gratuitous rider in the ambulance of defendant, within contemplation of the guest Statute of Texas. Gogreg v. Shepard Ambulance Service, 44 Washington 2d 528, 268 Pac. 2d 642; Johnson v. Smither, 116 S.W. 2d 822, error dismissed; Rushing v. Mulhearn Funeral Home, (La. Ct. of App.) 200 So. 52.

*Thompson, Knight, Wright & Simmons, Pinkney Grissom* and *David M. Kendall, Jr.,* of Dallas, for respondent.

Mr. Justice Wilson delivered the opinion of the Court.

In this suit against the owner of an ambulance, plaintiff who was a passenger in the ambulance, seeks damages for personal injuries suffered from a collision between defendant's ambulance and an automobile. The only question is whether or not the plaintiff is a "guest" of the owner of the vehicle within the terms of Art. 6701b, V.A.C.S. The trial court granted judgment for defendant upon motion for instructed verdict and this has been affirmed by the Court of Civil Appeals. 273 S.W. 2d 455.

A Miss Bernice Coble, the fiance of the plaintiff, was examined by a doctor who determined that she should be taken immediately to a hospital in an ambulance. Plaintiff asked a nurse in the doctor's office to call an ambulance and an ambulance was sent by defendant to pick up the patient. Miss Coble asked the plaintiff to ride in the ambulance with her. Plaintiff

told the driver and the attendant that he was going to ride in the ambulance with Miss Coble, and they said that it would be all right. Miss Coble was placed on an ambulance cot and rolled into the vehicle. The plaintiff got in and sat on a small seat near the patient. En route to the hospital the ambulance struck another vehicle.

Section 1 of Article 6701b, V.A.C.S., is as follows:

"No person transported over the public highways of this State by the owner or operator of a motor vehicle as his guest without payment for such transportation, shall have a cause of action for damages against such owner or operator for injuries, death or loss, in case of accident, unless such accident shall have been intentional on the part of said owner or operator, or caused by his heedlessness or his reckless disregard of the rights of others."

In order for this statute to govern the plaintiff must have been a guest of the owner of the motor vehicle "without payment for such transportation."

We hold that Article 6701b has no application to the case at bar. There is not a Texas decision directly in point. The two out-of-state cases which seem to be nearest in point treat the question as one of intent in making the contract of hire. Rushing v. Mulehearn Funeral Home, Inc., Ct. App. La. 1941, 200 So. 52; Vogreg v. Shepard Ambulance Service, Inc., 1954, 44 Wash. 2d 528, 268 Pac. 2d 642.

Here an ambulance was hired by Miss Bernice Coble and the plaintiff was invited by her. He was not invited by the defendant but was the guest of Miss Coble who was paying the owner of the vehicle for the transportation. Under the facts of this case, a sick person who hires an ambulance for transportation certainly has a right to have someone ride with her in the ambulance. The purpose of Article 6701b is to prevent fradulent collusion between an insured and a guest. The situation at bar does not fall within the purpose of the statute.

The defendant relies upon such cases as Burt v. Lochausen, 151 Texas 289, 249 S.W. 2d 194, which holds that there must be a benefit to the operator of the vehicle which is shown to have been the motivating influence for furnishing the transportation. Here the hire of the vehicle was the motivating influence for furnishing the transportation, and Miss Coble, who had hired

the vehicle, could, in the absence of some prohibition, take along plaintiff as her guest if she wanted to do so.

Accordingly the judgments of the Court of Civil Appeals and the trial court are both reversed and the case is remanded for another trial.

Opinion delivered July 27, 1955.

MR. JUSTICE WALKER concurring.

I agree that the judgments of the trial court and the Court of Civil Appeals should be reversed and the case remanded for another trial. The record shows that respondent based its charges upon the number of patients transported and that no additional charge was made for a friend or relative of the patient who rode in the ambulance, but this does not conclusively establish as a matter of law that petitioner was a guest within the meaning of Art. 6701b, Vernon's Ann. Tex. Civ. Stat. The testimony of Mr. Longley, the Vice-President of respondent corporation, that the $5.00 charged by his company for the trip was in payment for Miss Coble's transportation and that nothing was charged or paid for petitioner's passage, is merely his conclusion as to the legal effect of the transaction and is not controlling.

The question of whether petitioner was a passenger whose transportation was paid for or a guest must be determined from all the facts and circumstances of the case. The petitioner testified that he instructed a nurse to order an ambulance; that after some time two men dressed as ambulance drivers came to the clinic; that he told them he was going to the hospital with Miss Coble and they said "all right;" that Miss Coble was placed in the ambulance and he climbed in the back with her; and that there was no discussion of his getting a free ride to the hospital. The parties did not discuss the amount to be paid respondent corporation for its services and did not agree that the entire charge would be considered as payment for the transportation of Miss Coble or that nothing would be charged or paid for petitioner's ride. It does not appear that Miss Coble or petitioner knew of respondent's method of computing its charges, or that the parties contracted with reference thereto.

The fact that respondent made a charge of $5.00 for the trip and would have charged the same amount if petitioner had not been a passenger in the ambulance does not, in my opinion, de-

termine petitioner's status. Miss Coble and petitioner entered the ambulance and were transported thereby as part of a single business transaction with respondent, and all parties contemplated that respondent would be compensated for its part of the transaction. Respondent's method of computing its charges or the mental processes of its officers and agents, afford no basis for now separating the matter into two transactions, one for compensation and the other gratuitous. It is my opinion that under all of the facts of this case the payment by Miss Coble constituted payment for the transportation of both Miss Coble and the petitioner.

Opinion delivered July 27, 1955.

MR. JUSTICE CALVERT joined by CHIEF JUSTICE HICKMAN and and JUSTICE SMITH, dissenting.

I cannot agree with the disposition of this case or with the reasons assigned therefor in the majority opinion.

Petitioner has sought a reversal of the judgments of the trial court and Court of Civil Appeals on three points of error as follows:

■ "The Court of Civil Appeals erred in concluding that the Petitioner was clearly a gratuitous rider in Respondent's ambulance within contemplation of the Texas Guest Statute."

■ "The Court of Civil Appeals erred in concluding that the Respondent was not a public carrier and therefore within Sec. 2, Article 6701b, R.C.S., and exempt from the operation of the Texas Guest Statute."

■ "The Court of Civil Appeals erred in not sustaining the Petitioner's position that he was an invitee of the Respondent and not a mere licensee and entitled to the duty of care afforded an invitee."

None of the foregoing points of error has been sustained and yet the judgments of the courts below have been reversed and the cause remanded. The reversal is predicated on the holding "that Article 6701b has no application to the case at bar." Whether that holding is correct depends entirely on the facts in the record. What are the facts on which the holding is based? As best I can analyze the opinion they seem to be summed up in these conclusions: 1. The ambulance "was hired by Miss

Bernice Coble;" 2. Plaintiff was invited by Miss Coble and was not invited by the defendant; 3. Plaintiff was the guest of Miss Coble; 4. Miss Coble "was paying the owner of the vehicle for the transportation;" 5. Miss Coble, who hired the ambulance, had a right to have someone ride with her in the ambulance; 6. The facts of the case do not bring it within the purpose of the statute to prevent fraudulent collusion between an insured and a guest; 7. "The hire of the vehicle was the motivating influence for furnishing the transportation, and Miss Coble, who hired the vehicle, could, in the absence of some prohibition, take along plaintiff as her guest if she wanted to."

I submit that the foregoing conclusions of fact and law, when examined in the light of the record, cannot support the holding that Article 6701b has no application to the case.

The testimony is neither lengthy nor ambiguous. On the day in question Miss Coble, plaintiff's fiancee, went to Samuel's Clinic where it was determined that she should be sent to a hospital; Miss Coble telephoned the plaintiff and he and his brother went to the Clinic via street car; after a discussion with plaintiff Miss Coble decided she wanted to make the trip to the hospital in an ambulance, whereupon plaintiff requested a nurse to call an ambulance; when the ambulance arrived, in charge of a driver and an attendant, plaintiff asked them if he could go to the hospital with Miss Coble in the ambulance and they had no objection and said it would be all right; the driver and the attendant rode in the cab of the ambulance and Miss Coble, occupying a roll-away cot, and plaintiff, occupying one of two small chairs provided therein, rode in the body of the ambulance. The only testimony from which the nature of the arrangement between the parties for the use of the ambulance may be drawn is that of Mr. Longley, Vice-President of defendant corporation. He testified that the trip was not to be a gratuitous one and his testimony with the respect to the charges made by defendant corporation is as follows:

"Q: How much do you usually charge?

"A: Five dollars, anywhere in the city limits of Greater Dallas * * * .

Q: Your charge is five dollars for the trip, isn't that correct?

A: That's right.

Q: You don't charge by the person?

A: For the patient.

Q: I mean you don't charge for each person; you charge by the trip?

A: Yes, sir; I charge for the patient.

Q: Well, if you have two patients in there, do you have an extra charge?

A: Yes, sir.

Q: What is that extra charge?

A: Five dollars.

Q. For extra charge?

A: Yes, sir.

Q: That is when the patient is lying down on the cot?

A: Yes, sir, or sitting up, either one; if there is another patient, it is for two patients * * * .

Q: And this trip that Miss Coble took was one of those charged trips, is that right?

A: That's right. * * *

Q: Now, you testified this morning that the charge was five dollars a patient, if there were two patients it was $10.00?

A: Yes, sir.

Q: And sometimes - - - isn't it a fact that sometimes friends of the patient will be permitted to ride as the guest of the patient of Crane-Longley?

A: Yes, sir.

Q: That is gratis?

A: Yes, sir.

Q: Now, those patients - - - I mean those guests, or those people who ride with the people who may be patients, they don't contribute anything to Crane-Longley?

A: No, sir, the charge is for the patient only * * * .

Q: In other words, you are getting five dollars for the trip from that hospital to this hospital, isn't that correct?

A: Yes, sir.

Q: For the trip and for the patient?

A: That's right.

Q: And whoever is in the ambulance, isn't that correct?

A: No, it is not whoever is in the ambulance, it is the patient that we charge for."

Mr. Longley's testimony also made clear that it was the practice of respondent, within reasonable limits, to permit relatives or friends to accompany a patient, without charge.

I submit that a reasonable interpretation of the foregoing testimony will not support a conclusion that the arrangement between Miss Coble and the defendant adds up to a contract of hire of the ambulance rather than a payment for her own transportation as a patient. The record shows that Miss Coble was to be billed for the sum of five dollars for the services. Clearly, under the record, this charge was for transporting Miss Coble as a patient. It was not compensation for the hire of the ambulance, with the right in Miss Coble to control the ambulance and with the incidental right in her to permit any and all others of her choosing to ride in the ambulance free of charge.

Moreover, the plaintiff makes no such claim in this case. The idea that the arrangement amounted to a contract of hire by Miss Coble as distinguished from a payment by her for transportation originated in this court. As a matter of fact plaintiff's theory of the case has been and is that the payment by Miss Coble represented a payment for the transportation of both Miss Coble and the plaintiff. He emphasizes that theory in this court by calling attention to his pleadings in which he alleged that the ambulance was provided "in order to transfer the plaintiff and one Bernice Coble from the said hospital to St.

Paul's Hospital in said city," and that "the defendant's ambulance responded to the call" for the purpose of "transporting both plaintiff and said Bernice Coble to St. Paul's hospital and was hired to do so."

The plaintiff has not contended and does not contend in this court, with good reason I think, that the ambulance was hired by Miss Coble so as to give her the right to have someone ride with her. If there were such a contract of hire it would raise extremely serious questions not noticed in the majority opinion, some of which may be noted. If the five dollars to be paid by Miss Coble was for the hire of the ambulance, as distinguished from payment for her transportation, did the contract include also the services of the driver and attendant? If so, were they the servants and employees of Miss Coble so as to relieve defendant from liability? Were they borrowed servants? If the contract did not include their services, were such services gratuitous? If the services were gratuitous, could there be any recovery against defendant for simple negligence by either Miss Coble or plaintiff inasmuch as employees of the defendant would be transporting both Miss Coble and plaintiff "without payment for such transportation?"

If, as the record clearly indicates, Miss Coble was only paying for her transportation as a patient to the hospital, it is immaterial that plaintiff was a "guest" of Miss Coble and that he was invited by Miss Coble and was not invited by the defendant.

There is no magic in words. The term "guest" in its broadest sense includes both those who pay and those who do not. For instance, one who pays for his lodging at a hotel is nevertheless referred to as a "guest" of the hotel. Article 6701b exempts the owner or operator of a motor vehicle from liability for simple negligence to a "guest without payment for such transportation," thereby implying that there may also be a "guest" who does pay. So, also, the term "passenger" in its broadest sense, includes those who pay and those who do not pay for their transportation. But in their relation to the legal problems arising under Guest Statutes the two terms have come to have restricted and well-recognized meanings: a "passenger" is one whose transportation is paid for and a "guest" is one whose transportation is gratuitous. It is in this restricted sense that I use the terms.

The statute is not concerned with the relationship between two persons who ride in a motor vehicle owned or operated by

another. By its very terms the statute makes the nature of the relationship between the injured party and the owner or operator of the vehicle the test of liability. To determine liability we must determine the nature of that relationship. Miss Coble no doubt wanted plaintiff to ride in the ambulance with her. That plaintiff wished to ride with her is undertandable and at once obvious from his statement to defendant's employees that he was going to ride with her, but there is no evidence here that he could or would have done so without their permission. When he obtained that permission some kind of relationship between plaintiff and defendant was established. When he entered the ambulance plaintiff became, as to defendant, either a guest, with no right of recovery, or he became a passenger, with a right of recovery, for simple negligence, wholly irrespective of the relationship between plaintiff and Miss Coble. The statute makes the relationship so established between plaintiff and defendant the entire basis of liability and nonliability. I will have more to say later about the particular relationship between the plaintiff and the defendant in this case.

I cannot agree to the conclusion that the facts of this case do not bring it within the purposes of the statute. The purpose of the statute was to prevent fraudulent collusion against insurers by insureds and their guests. While there is a greater likelihood of such collusion between the insured and a relative or a friend, the statute is not limited to guests who are relatives or friends. Its terms were intended to prohibit collusion between the insured and any guest. But even if the purposes of the statute were directed at collusion between the insured and his relatives and friends the defendant would fall within that category. The testimony shows that the defendant and Mr. Longley had known each other intimately since 1908. There is as much reason to suspect that there might be collusion between Mr. Longley and the defendant as there is to suspect that there might be collusion between any operator of a motor vehicle and his friend.

I cannot agree to the broad proposition that one who engages an ambulance to transport him to a hospital has a *right*, in the absence of some prohibition, to take along such people as he may wish to take as his guests. There is no statute which gives that right. Neither is there anything in the record which indicates that such a right exists as an incident to the payment for one's own transportation as a patient.

The real issue in this case is a simple one. One being trans-

ported over the highways in a motor vehicle owned or operated by another may recover damages for injuries sustained as a result of the owner or operator's simple negligence *only* by establishing that he was a passenger in the vehicle. He does not make out a case by offering proof that he was in the vehicle, that he was injured, and that the owner or operator was negligent. To avoid an instructed verdict and take his case to the jury, in the absence of gross negligence, it is incumbent on him to offer proof that his relationship with the owner or operator of the vehicle was that of a passenger. He does not establish such a relationship, ipso facto, by proof that he was a guest of another occupant of the vehicle or was invited into the vehicle by another occupant thereof.

Corpus Juris Secundum (Vol. 60, Sec. 399(1) c), after stating that to remove himself from the category of a guest one must show some pecuniary benefit flowing to the owner or operator of the vehicle from the transportation, states: "The benefit which must be present to remove the rider from the category of guest imports some contractual relation between the parties to which such benefit is referable * * * . Furthermore, the benefit which defendant derives must flow from, and depend on, the transportation of the person injured, and the mere fact that defendant derives some benefit, pecuniary or otherwise, from making the trip is insufficient where such benefit would have accrued without the transportation of the person injured * * *. The mere fact that the parties have contracted for the use of the vehicle for purposes other than the transportation of the person injured does not give such person the status of a passenger rather than a guest, where he confers no pecuniary benefit on the carrier for his own transportation." The same idea is again expressed in Sec. 399(5)b, p. 1015.

We expressed the same idea in Burt v. Lockhausen, 151 Texas 289, 249 S.W. 2d 194, 198, when we gave our express approval to the following statement from the opinion of the Court of Civil Appeals in the same case (244 S.W. 2d 915, 917) : "the rule established by the authorities everywhere seems to be, to remove a case from the provisions of such statutes *a definite relationship must be established,* and a definite tangible benefit to the operator shown to have been the motivating influence for furnishing the transportation."

Thus it appears that to be entitled to a reversal of the judgments of the courts below the record must disclose that the plaintiff has discharged the burden placed on him by offering proof

that he was a passenger in the ambulance on the occasion in question. It is not contended by plaintiff that he either did or was expected to contribute or perform any service in connection with the transportation of Miss Coble and the issue is therefore narrowed to this: Is there any evidence that the sum of five dollars to be charged by defendant for the transportation of the patient, Miss Coble, covered and included also payment for the transportation of petitioner? I submit there is no such evidence.

The petitioner was in the ambulance by the grace of respondent. He was there as the result of an act of kindness on the part of respondent. Neither he nor Miss Coble nor anyone else was paying for his transportation. Surely it is enough to say that kindness, generosity and morality, under the circumstances, should induce respondent to transport plaintiff without pay, without holding that such considerations should also require an abrogation of the plain terms of the statute and render defendant liable in damages to plaintiff for injuries growing out of simple negligence.

It seems to me that what the majority has undertaken to do is to bring this case within a fact situation which simply does not exist and which may be illustrated by the simple case of the owner of a taxicab who will transport one person or five people from a down-town hotel in Austin to the State Capitol for the sum of 50 cents, one person making the whole payment if five are transported. In this fact situation none of the four non-paying persons in the taxicab would be a guest of the owner within the meaning of the statute. The reason he would not be a guest of the owner would not be because he was a guest of the paying passenger but because the payment was for the transportation of all. This simply is not that type of case.

Having decided to reverse and remand the case on the theory expressed in the opinion the majority did not reach plaintiff's second point. It is that defendant is a public carrier under the provisions of Sec. 2 of Article 6701b and therefore does not enjoy the exemption provided in Sec. 1. Since this matter is not discussed by the majority I see no need to dwell on it at length. Suffice it to say that in my opinion the term "public carrier" as used in Sec. 2 of Article 6701b is synonymous with the term "common carrier" and does not embrace motor vehicles which are operating under private or individual contracts of hire. See 4 Blashfield Cyclopedia of Automobile Law and Practice, Sec. 2141. Hollander v. Smith & Smith, 10 N.J. Super. 82; 76 Ath. 2d 697; 21 A.L.R. 2d 902; Pemberton v. Lewis, 235 N.C. 188, 69 S.E. 2d 512.

The judgments of the trial court and Court of Civil Appeals should be affirmed.

Opinion delivered July 27, 1955.

Rehearing overruled November 16, 1956.