**L.D. WHITWORTH, Petitioner,**

v.

**Douglas BYNUM, Jr., Respondent.**

**No. C–3547.**

Supreme Court of Texas.

July 10, 1985.

Rehearing Denied Sept. 18, 1985.

Howard L. Nations, Zandra Anderson, Houston, for petitioner.

McLeod, Alexander, Powel and Apffel, Otto Hewitt, III and James L. Ware, Galveston, for respondent.

KILGARLIN, Justice.

The issue in this case is the constitutionality of the Texas Automobile Guest Statute. This lawsuit arose out of an automobile collision causing injuries to L.D. Whitworth while he was a passenger in Douglas Bynum's car. Whitworth sued Bynum, but because Whitworth was married to Bynum's niece, the trial court rendered summary judgment for Bynum based on the Guest Statute. The court of appeals affirmed that judgment. 679 S.W.2d 608. Whitworth argues in this court that the Texas Guest Statute is unconstitutional under the Texas and federal equal protection clauses because it bears no rational relationship to its purpose. We agree. Therefore, we reverse the judgments of the courts below and remand this cause for trial.

The Texas Automobile Guest Statute (Tex.Rev.Civ.Stat.Ann. art. 6701b [Vernon 1977]) reads in part as follows:

Section 1(a). No person who is related within the second degree of consanguinity or affinity to the owner or operator of a motor vehicle and who is being transported over the public highways of this State by the owner or operator of the motor vehicle as his guest without payment for such transportation, shall have a cause of action for damages against such owner or operator for injuries, death or loss, in case of accident, unless such accident shall have been intentional on the part of said owner or operator, or caused by his heedlessness or his reckless disregard of the rights of others. There shall be no such immunity for an owner or operator who is not so related to the guest.

Although the Guest Statute was originally passed by the legislature in 1931, the current provision is the result of a 1973 amendment limiting the statute to persons related within the second degree of consanguinity or affinity. Prior to 1973, all non-paying guests were within the ambit of the statute. Acts 1931, 42nd Leg., p. 379, ch. 225. Amended by Acts 1973, 63rd Leg., p. 42, ch. 28, § 3, effective September 1, 1973.

█ The announced legislative purpose behind the Texas Guest Statute was to prevent fraudulent collusion between an insured party and a guest. *Cedziwoda v. Crane-Longley Funeral Chapel*, 155 Tex. 99, 283 S.W.2d 217, 218 (1955). The Texas statute, as well as statutes in other states, was the result of "persistent and effective lobbying on the part of liability insurance companies." Prosser, *Law of Torts* § 34 at 187 (4th ed. 1971); *see also* White, *The Liability of an Automobile Driver to a Non-Paying Passenger*, 20 Va.L.Rev. 326 (1934). As a result, twenty-nine states in the late 1920's and the 1930's enacted guest statutes relaxing the standard of care required of an automobile owner or driver towards his gratuitous passenger. 2 Harper & James, *Law of Torts* § 1615 at 951 (1956).

Initially, plaintiffs who challenged the constitutionality of guest statutes were almost uniformly unsuccessful. An early influential case was *Silver v. Silver*, 280 U.S. 117, 50 S.Ct. 57, 74 L.Ed. 221 (1929). In it the Supreme Court found a rational distinction between guests in automobiles and guests in other transportation modes. *Id.* at 123, 50 S.Ct. at 58. Although *Silver* dominated law and discussion on guest statutes for many years, it was actually a very narrow opinion. There was no discussion of the legislative purpose, nor was there any analysis of whether there was a rational connection between the statute's objectives and the means employed to accomplish those objectives. For example, the Supreme Court, in reaching its holding, said "it is not so evident that no grounds exist for the distinction that we can say a priori that the classification is one forbidden as without basis and authority." *Id.* Indeed, *Silver* stands as one of a long line of United States Supreme Court cases which assumed state automobile regulations to be constitutional without detailed examination. *See Thompson v. Hagan*, 96 Idaho 19, 523 P.2d 1365, 1370 (1974).

Early case law indicates that Texas, along with other states, upheld the constitutionality of its Guest Statute. *See Campbell v. Paschall*, 132 Tex. 226, 121 S.W.2d 593 (1938). Although *Campbell* did not cite a specific ground of constitutional attack, the Commission of Appeals called

attention to several decisions from other jurisdictions upholding similar statutes and likewise cited *Silver.* No mention was made in *Campbell* of a challenge to the Guest Statute's constitutionality on the basis of the Texas Equal Protection Clause. Tex. Const. art. I, § 3.[1]

In 1973, judicial inclination to follow earlier precedent in this area began to change with the holding of *Brown v. Merlo,* 8 Cal.3d 855, 506 P.2d 212, 106 Cal.Rptr. 388 (1973). In that case, the California Supreme Court declared its Guest Statute unconstitutional. Since that decision, eleven more states have declared their respective guest statutes unconstitutional. *See Thompson v. Hagan,* 96 Idaho 19, 523 P.2d 1365 (1974); *Bierkamp v. Rogers,* 293 N.W.2d 577 (Iowa 1980); *Henry v. Bauder,* 213 Kan. 751, 518 P.2d 362 (1974); *Manistee Bank and Trust Co. v. McGowan,* 394 Mich. 655, 232 N.W.2d 636 (1975); *Laakonen v. Eighth Judicial District Court,* 91 Nev. 506, 538 P.2d 574 (1975); *McGeehan v. Bunch,* 88 N.M. 308, 540 P.2d 238 (1975); *Johnson v. Hassett,* 217 N.W.2d 771 (N.D. 1974); *Primes v. Tyler,* 43 Ohio St.2d 195, 331 N.E.2d 723 (1975); *Ramey v. Ramey,* 273 S.C. 680, 258 S.E.2d 883 (1979), *cert. denied,* 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980); *Malan v. Lewis,* 693 P.2d 661 (Utah 1984); *Nehring v. Russell,* 582 P.2d 67 (Wyo.1978).[2] In addition, eleven states have legislatively repealed their respective guest statutes.[3] Thus, of the twenty-nine states which originally enacted guest statutes, only Texas and four other states still have such statutes.[4]

It is true that since *Brown v. Merlo* one Texas court, acknowledging that case, again declared our Guest Statute to be constitutional. *See Tisko v. Harrison,* 500 S.W.2d 565 (Tex.Civ.App.—Dallas 1973, writ ref'd n.r.e.). However, that holding is not dispositive. Among other things, *Tisko* was concerned with the act prior to the 1973 amendments. More importantly, *Tisko,* although mentioning the Texas equal protection provision, observed that "[n]o contention is made that the 'equal rights' provision of our state Bill of Rights, Tex. Const. art. I, § 3 (Vernon 1955), establishes a different and more exacting standard for the Texas Legislature." *Id* at 570. Finally, *Tisko* relied upon *Silver* as the basis for holding the statute constitutional.

■ In his brief and at oral argument, Bynum contended that any constitutional question as to the Guest Statute is foreclosed by federal precedent in this area. He alleged that *Silver,* which declared the Connecticut statute to be constitutional, forecloses any consideration by this court as to the statute's constitutionality. We disagree. Subject to adhering to minimal federal standards, we are at liberty to interpret state statutes in light of our own constitution and to fashion our own tests to determine a statute's constitutionality. "The states are free to accept or reject federal holdings and to set for themselves such standards as they deem appropriate so long as the state action does not fall below the minimum standards provided by the federal constitutional protections." *Brown v. State,* 657 S.W.2d 797, 799 (Tex. Crim.App.1983). This is particularly true when a state court is acting within a subject area uniquely appropriate for a state's judiciary, such as the common law.

■ An examination of Texas cases reveals the standards we have previously

---

1. "All free men, when they form a social compact, have equal rights, and no man, or set of men, is entitled to exclusive separate public emoluments, or privileges, but in consideration of public services."
Tex. Const. art. I, § 3.

2. One decision declaring the Guest Statute unconstitutional prior to *Brown v. Merlo* can be found. *See Ludwig v. Johnson,* 243 Ky. 533, 49 S.W.2d 347 (1932). Thus, before today thirteen states in all have judicially declared guest statutes unconstitutional. These states have relied primarily upon equal protection provisions in their own state constitutions in declaring guest statutes unconstitutional.

3. Those states that have repealed their statutes legislatively are Arkansas, Colorado, Connecticut, Delaware, Florida, Montana, Oregon, South Dakota, Vermont, Virginia, and Washington.

4. States that have retained their guest statutes are Alabama, Illinois, Indiana, Nebraska and Texas.

set in respect to equal protection. A court begins by presuming a statute's constitutionality, whether the basis of the constitutional attack is grounded in due process or equal protection. *See Texas Public Building Authority v. Mattox*, 686 S.W.2d 924 (Tex.1985); *Sax v. Votteler*, 648 S.W.2d 661 (Tex.1983). Even when the purpose of a statute is legitimate, equal protection analysis still requires a determination that the classifications drawn by the statute are rationally related to the statute's purpose. *Sullivan v. University Interscholastic League*, 616 S.W.2d 170, 172 (Tex.1981). Under the rational basis test of *Sullivan*, similarly situated individuals must be treated equally under the statutory classification unless there is a rational basis for not doing so. Although Bynum has argued that an overinclusive statute cannot be struck down under a rational relationship test, overinclusiveness was a determinative factor in *Sullivan* in declaring a rule relating to high school athletes unconstitutional under the Texas version of the rational basis test:

> In practical effect, the challenged classification simply does not operate rationally to deter recruitment. The U.I.L. rule is overbroad and over-inclusive. The rule burdens many high school athletes who were not recruited and were forced to move when their family moved for employment or other reasons. The fact that there is no means of rebutting the presumption that all transferring athletes have been recruited illustrates the capriciousness of the rule. The inclusion of athletes who have legitimately transferred with recruited athletes does not further the purpose of the transfer rule.

*Id.* at 173.[5]

■ The Texas Guest Statute creates a presumption that all automobile passengers suing a driver who is within the second degree of affinity or consanguinity do so collusively. We refuse to indulge in the assumption that close relatives will prevaricate so as to promote a spurious lawsuit. No better example exists than in this case. Had collusion existed, Bynum could have acknowledged Whitworth as a paying passenger[6] or admitted to acts of gross negligence. Dishonest individuals will always attempt to circumvent the intent of the statute by lying, while honest citizens are penalized when the truth brings them within the statutory scope denying them a negligence cause of action.

Additionally, the statute affords no opportunity for proof that a suit was filed because a plaintiff conscientiously believed that his injury was caused by the negligence of a person within the proscribed degree of relationship. In this respect, the Guest Statute is not unlike the University Interscholastic League rule that presumed all students who transferred schools did so because they were recruited to participate in athletics. It was this irrebuttable presumption that we condemned as being violative of equal protection guarantees in *Sullivan*.

■ Following the standards enunciated in *Sullivan*, we hold the Texas Automobile Guest Statute unconstitutional under Tex. Const. art. I, § 3, because the classifications drawn by this statute are not "rationally related to a legitimate state interest." *Id.* at 172. Having decided the statute to be unconstitutional under the Texas Constitution, we find it unnecessary to address constitutional questions raised by the fourteenth amendment of the United States Constitution.

---

5. The *Sullivan* case was a decision based upon the fourteenth amendment rather than art. I, § 3 of the Texas Constitution. However, the case does articulate factors that are important to interpreting art. I, § 3, which is the constitutional basis for this opinion.

6. It should be noted that there are other classifications in the Act that are not rationally related to the statutory purpose of reducing collusion. For instance, a passenger injured on a public road has no negligence cause of action, but a passenger injured on a private road does. Likewise, the Act creates arbitrary distinctions between relatives who are passengers and relatives who are pedestrians, and distinctions based upon the type of vehicle involved. Although these distinctions are not determinative of the Act's constitutionality in this case, they do offer further evidence of the Act's failure to discriminate in a manner rationally related to its statutory purpose.

The judgment of the court of appeals is reversed and the cause is remanded to the trial court for trial on the merits.

HILL, C.J., dissents with an opinion in which McGEE, J., joins.

HILL, Chief Justice, dissenting.

I respectfully dissent. The Auto-Guest Statute has been examined by the legislature many times in the past sixteen years. In 1969, a bill was introduced in the House that would have limited the Guest Statute to a narrowly defined class of guests, and a bill was introduced in the Senate to repeal the Guest Statute; neither bill passed. Tex.H.B. 779, 61st Leg. (1969); Tex.S.B. 405, 61st Leg. (1969). In 1971, a bill was introduced that would have repealed the Guest Statute; it did not pass. Tex.S.B. 158, 62nd Leg. (1971). In that same year, the legislature passed a comprehensive comparative negligence bill that specifically stated that it was not intended to repeal the guest statute; the bill was vetoed by the Governor. Tex.H.B. 556, 62nd Leg. (1971). In 1973, the Guest Statute was amended to its current form. Act of April 9, 1973, ch. 28, § 3, 1973 Tex.Gen. Laws 42–43. In 1983 and 1984, bills were introduced which would have codified the Auto-Guest Statute, without substantive change, under a tort recodification; the 1983 bill was vetoed by the Governor and the 1984 did not pass. Tex.H.B. 1186, 68th Leg. (1983); Tex.H.B. 123, 68th Leg., 2d Called Sess. (1984); S.B. 53, 68th Leg., 2d Called Sess. (1984).

The majority recognizes that the rational-basis test, which only requires that the classification be rationally related to a legitimate state interest to pass constitutional muster, is applicable here. Under such test the legislature is given wide latitude in enacting laws. While this deference given to the legislature does not, and should not, result in an abdication of the judiciary's responsibility to ensure that the legislature acts within the framework of the constitution, to achieve the proper balance of power between our branch of government and the legislature, we must be acute in deciphering what legislative acts truly trammel constitutional rights and what legislative acts are merely unwise in our own judgment. In *Smith v. Davis*, 426 S.W.2d 827, 831 (Tex.1968), we said:

[A] mere difference of opinion, where reasonable minds could differ, is not a sufficient basis for striking down legislation as arbitrary or unreasonable. The wisdom or expediency of the law is the Legislature's prerogative, not ours.

As the majority notes, the primary legislative purpose behind this statute was to prevent fraudulent collusion between an insured party and a guest against an insurance company on the issues of the insured's liability and the guest's damages. The legitimacy of this purpose is undisputed. The Guest Statute creates two classes of automobile guests: (1) those non-paying guests related to the vehicle's owner or operator within the second degree of consanguinity or affinity, who are being transported over the public highways, and (2) all other motor vehicle guests. This statute treats these two classes differently by denying the former group a cause of action in negligence for injuries sustained against the owner/operator while allowing the latter group a cause of action.

Under the rational basis test, I cannot say that this statute is not rationally related to the prevention of collusive lawsuits. The legislature is empowered to deal with problems like this. In enacting the guest statute, the legislature weighed "the advantage of barring fraudulent guest claims against the disadvantage of also barring honest guest claims. This balancing of intangibles is a proper legislative function." *Tisko v. Harrison*, 500 S.W.2d 565, 572 (Tex.Civ.App.—Dallas 1973, writ refused n.r.e.).

That the legislature may have drawn the lines imperfectly when considered with the purported ends is of little importance to us in reviewing the rationality of the statute. This statute, with its many shortcomings, does have a "tendency to cure" the problem of collusive lawsuits. See *Liggett Co. v. Baldridge*, 278 U.S. 105, 115, 49 S.Ct. 57, 60, 73 L.Ed. 204 (1928) (Holmes, J., dissenting), *overruled*, *North Dakota Pharmacy Board v. Snyder's Stores*, 414 U.S. 156,

167, 94 S.Ct. 407, 414, 38 L.Ed.2d 379 (1973). If I were a legislator I would have voted to abolish the guest statute, but as a member of the judiciary it is not within my sphere of duties to substitute my judgment on this subject for that of the legislature.

Because I would hold the statute constitutional, I dissent.

McGEE, J., joins in this dissent.