TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-02-00005-CV







Benjamin Robert Mauldin, Appellant



v.



Texas State Board of Plumbing Examiners and Robert L. Maxwell, Appellees








FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT


NO. GN000862, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING 





 Benjamin Robert Mauldin appeals the district court's denial of his request for an
injunction against the Texas State Board of Plumbing Examiners and its executive director, Robert
L. Maxwell (collectively, "the Board"). Mauldin asked that the district court declare unconstitutional
the Board's requirement that he supply his social-security number to retain his plumber's license. 
He requested a permanent injunction against enforcement of the requirement and requested that his
social-security number be expunged from the Board's records. He contends that the requirement
violates the equal-protection clause of the Texas Constitution. We will affirm the judgment.


BACKGROUND


 Mauldin is a plumber who has been licensed by the Board since 1974. In 1996, the
Board began requiring that applicants for plumbing licenses or renewals provide their social-security
numbers on the application. The requirement is based on a statutory requirement that licensing
boards acquire the social-security numbers of applicants for licenses. See Tex. Fam. Code Ann.
§ 231.302(c)(1) (West 2002); see also 42 U.S.C. § 666(a)(13) (Supp. 2002). This requirement is
designed to enable the State to enforce child-support obligations by suspending licenses. See Tex.
Fam. Code Ann. § 232.003 (West 2002). The Board is one of the listed licensing authorities. Id.
§ 232.002(29) (West 2002). Mauldin supplied his social-security number when the requirement was
instituted. 

 He reconsidered his compliance and filed this suit seeking a declaratory judgment that
requiring him to provide the Board his social-security number violates the equal-protection clause
of the Texas Constitution. (1) See Tex. Const. art. I, § 3. Mauldin acknowledges the societal need for
social security and a numbering system to administer the program; his mother collects social-security
payments, and he uses his social-security number when filing his income-tax return. Mauldin's
religious beliefs make him leery of the use of the number purely as an identification tool, in part
because the federal statute prompting state licensing boards to collect social-security numbers is
section 666 of title 42, United States Code. This codification reinforces to him that the use of the
social-security number purely as an identification tool is a precursor to the mark of the beast that will
be used after the rise of the anti-Christ foretold in the Bible. (2) Mauldin believes that this use of
social-security numbers may condition people to accept the beast's mark later. He says that the
denial of licenses to those who do not give a social-security number is like the prophesied prevention
of buying and selling.

 The parties filed cross motions for summary judgment. The Board argued that section
231.302 is a valid exercise of the police and licensing power, is not overly broad or inclusive, and
does not violate equal-protection guarantees. Mauldin filed a general motion for summary judgment,
supported by a brief in which he argued that there were less intrusive alternatives to requiring all
applicants to disclose their social-security numbers, that the requirement unfairly does not
distinguish between licensees who shirk their parental obligations and other applicants, and that the
requirement violates equal protection by infringing on his rights to work, worship, and due process.

 The district court granted the Board's motion for summary judgment against all of
Mauldin's claims and denied Mauldin's motion for summary judgment without stating a basis.


DISCUSSION


 Mauldin contends on appeal that the district court erred by granting the Board's
motion for summary judgment because the Board violated his right to equal protection under the
Texas Constitution. See Tex. Const. art. I, § 3. (3) He contends that the requirement that he provide
his social-security number to retain his plumbing license violates his rights to work, to worship, to
have privacy, to not speak, to defend himself and his family, and to be free from official
discrimination. He argues that the requirement that all licensees provide their social-security
numbers is overly broad because only a minuscule percentage of licensees will fail to pay required
child support; he also argues that the requirement has not been shown to be effective, and that other
information and means could more effectively accomplish the objective and burden fewer people. 
He seeks reversal of the summary judgment and remand of the cause.

 The appellate standards for reviewing a summary judgment are well established. The
party moving for summary judgment has the burden of showing no genuine issue of material fact
exists and it is entitled to judgment as a matter of law. See Tex. R. Civ. P. 166a(c); Nixon v. Mr.
Prop. Mgmt. Co., 690 S.W.2d 546, 548 (Tex. 1985). A defendant moving for summary judgment
must either (1) disprove at least one element of the plaintiff's theory of recovery, or (2) plead and
conclusively establish each essential element of an affirmative defense. See City of Houston v. Clear
Creek Basin Auth., 589 S.W.2d 671, 678-79 (Tex. 1979); Zep Mfg. Co. v. Harthcock, 824 S.W.2d
654, 657 (Tex. App.--Dallas 1992, no writ).

 When evaluating a claim that the State has violated the equal-protection clause of the
constitution, a court's standard of review depends on the nature of the rights affected. If the statute
limits a fundamental, constitutionally secured right or implicates a suspect class, we must strictly
scrutinize the governmental action. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 440-41 (1985); Spring Branch ISD v. Stamos, 695 S.W.2d 556, 559 (Tex. 1985). Otherwise we look to
see if a rational basis exists for the governmental action. See Owens Corning v. Carter, 997 S.W.2d
560, 580 (Tex. 1999).


The strict scrutiny test does not apply

 Mauldin is not a member of a suspect class. Inherently suspect classes include
gender, race, alienage, and national origin. Frontiero v. Richardson, 411 U.S. 677, 688 (1973). 
Persons in suspect classes must possess either an "immutable characteristic determined solely by the
accident of birth," id. at 686, or be "saddled with such disabilities, or subjected to such a history of
purposeful unequal treatment, or relegated to such a position of political powerlessness as to
command extraordinary protection from the majoritarian political process." San Antonio ISD v.
Rodriguez, 411 U.S. 1, 28 (1973). We find nothing in the record indicating that Mauldin's
complaints relate to his being a member of a suspect class; the only indications are to the contrary.

 We also find as a matter of law that the six rights allegedly violated either are not
fundamental or have not been violated in such a way as to trigger strict scrutiny. Fundamental rights
are those that arise from the express and implied protections of personal liberty recognized in the
federal and state constitutions. Richards v. League of United Latin Am. Citizens (LULAC), 868
S.W.2d 306, 314 (Tex. 1993) (describing as fundamental the rights to vote, travel, marry, and,
sometimes, privacy). Mauldin complains of violations of his rights to work, to worship, to have
privacy, to not speak, to defend himself and his family, and to be free of official discrimination.

 The latter two complaints derive from statutory, not fundamental, constitutional bases. 
The right to be free of official discrimination is a statutory right, not a fundamental right. See Tex.
Civ. Prac. & Rem. Code Ann. § 106.001 (West Supp. 2003) (barring discrimination by state officials
based on race, religion, color, sex, or national origin). The statute provides a mechanism to seek
redress for violations of fundamental rights, but it does not create a separate fundamental right. The
right to defend oneself, others, and property are statutory affirmative defenses to criminal
prosecution, but are not enshrined as fundamental rights in the constitution. See Tex. Pen. Code
Ann. §§ 9.31-.44 (West 1994 & Supp. 2003).

 Neither is the right to work in a particular profession a fundamental right. It is a
protected right, but one subject to rational regulation. State v. Project Principle, Inc., 724 S.W.2d
387, 391 (Tex. 1987); see Schware v. Board of Bar Exam'rs, 353 U.S. 232, 239 (1957); see also
Massachusetts Bd. of Ret. v. Murgia, 427 U.S. 307, 312-13 (1976).

 Although the right to worship without governmental restriction or compulsion is
fundamental, the Supreme Court has refused to strictly scrutinize laws that are generally applicable
and neutral toward religion yet have an incidental effect on certain religious practices. See
Employment Div., Dept. of Human Res. v. Smith, 494 U.S. 872, 878-79 (1990). (4) The right of free
exercise does not relieve an individual of the obligation to comply with a valid and neutral law of
general applicability on the ground that the law proscribes (or prescribes) conduct that his religion
prescribes (or proscribes). Id. In Smith, Native Americans who used peyote in their religious rituals
challenged an Oregon law criminalizing the possession of peyote. Id. at 874-75. The men sought
relief from the law when they were denied unemployment benefits after they were fired for using
peyote sacramentally. Id. The Supreme Court held that, because the law criminalizing possession
of peyote was neutral and generally applicable, it did not impinge on their fundamental right to free
exercise of religion so as to invoke the strict-scrutiny test. Id. at 885. The Court held that to make
an individual's obligation to obey the law contingent upon the law's coincidence with religious
beliefs except where the State's interest is compelling would permit the individual to become a law
unto himself, contradict constitutional tradition and common sense, and invite anarchy, given the
diversity of religious beliefs in this country. Id. at 888-90. 

 The Supreme Court's refusal to apply the strict-scrutiny test to a neutral and generally
applicable law that incidentally criminalizes a religious ritual argues persuasively that we should not
apply strict scrutiny to a neutral and generally applicable requirement that a license applicant inform
the licensing board of his social-security number. There is no indication from the text of the statute
or the record of this case that the requirement is intended, overtly or covertly, to burden religious
practice or belief. See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 534-36 (1993). We therefore apply the rational-basis test to the requirement's asserted burden on
Mauldin's religious beliefs.

 The same logic applies to Mauldin's assertions of his rights to not speak and to
privacy; he asserts these rights as they relate to his right to worship free of governmental restraint
or compulsion. Mauldin is not being singled out for this requirement because of his religious beliefs.
Nor is he required to pledge or proclaim support for the requirement or the government. Compare
Wooley v. Maynard, 430 U.S. 705, 717 n.15 (1977) (dicta that having "In God We Trust" on
currency does not compel speech because it is not associated with individual and not publicly
displayed), with Wooley, 430 U.S. at 717 (New Hampshire cannot compel citizens to display on their
cars license plates with "Live Free or Die") and West Virginia State Bd. of Educ. v. Barnette, 319
U.S. 624, 642 (1943) (Jehovah's Witnesses cannot be compelled in school to recite Pledge of
Allegiance against their beliefs because "the compulsory flag salute and pledge requires affirmation
of a belief and an attitude of mind"). Indeed, it is not clear that supplying a social-security number
on an application is considered speech under the Constitution. See United States v. Sindel, 53 F.3d
874, 878 (8th Cir. 1995) ("The IRS summons requires Sindel only to provide the government with
information which his clients have given him voluntarily, not to disseminate publicly a message with
which he disagrees. Therefore, the First Amendment protection against compelled speech does not
prevent enforcement of the summons."). Mauldin, like every other license applicant in Texas, is
required for a limited purpose to divulge to a state agency a number that was assigned to him by the
federal government. 


Applying the rational-basis test

 Under the rational-basis test, similarly situated individuals must be treated equally
under the statutory classification unless there is a rational basis for not doing so. Whitworth v.
Bynum, 699 S.W.2d 194, 197 (Tex. 1985). We must uphold the law "if there is any reasonably
conceivable state of facts that could provide a rational basis for the classification." Federal
Communications Comm'n v. Beach Communications, Inc., 508 U.S. 307, 313-14 (1992). A
legislative classification must be sustained unless it is arbitrary and bears no rational relationship to
a legitimate governmental interest; there may be more than one permissible resolution of a legislative
challenge. See Jefferson v. Hackney, 406 U.S. 535, 546-47 (1972). The Supreme Court summarized
the burdens on the parties, writing that a state


 has no obligation to produce evidence to sustain the rationality of a statutory
classification. A legislative choice is not subject to courtroom factfinding and may
be based on rational speculation unsupported by evidence or empirical data. A
statute is presumed constitutional, and the burden is on the one attacking the
legislative arrangement to negative every conceivable basis which might support it,
whether or not the basis has a foundation in the record. Finally, courts are compelled
under rational-basis review to accept a legislature's generalizations even when there
is an imperfect fit between means and ends. A classification does not fail
rational-basis review because it is not made with mathematical nicety or because in
practice it results in some inequality. The problems of government are practical ones
and may justify, if they do not require, rough accommodations--illogical, it may be,
and unscientific.



Heller v. Doe, 509 U.S. 312, 320-21 (1993) (quotations and citations omitted).

 State law requires the Board to request, and applicants for licenses to supply, their
social-security numbers "[t]o assist in the administration of laws relating to child support
enforcement . . . ." Tex. Fam. Code Ann. § 231.302(c)(1). The statute expressly does not prohibit
agencies from obtaining the social-security numbers under other statutes, but states that "a social-security number provided under this section is confidential and may be disclosed only for the
purposes of responding to a request for information from an agency operating under the provisions
of Part A or D of Title IV of the federal Social Security Act." Id. § 231.302(e). 

 Mauldin argues that requiring plumber's license applicants to provide social-security
numbers is not rationally related to the State's interest in having qualified plumbers or enforcing
child-support obligations. He questions the need for social-security numbers when the Board has
other identifying information such as name, address, and driver's license numbers. He argues that
administrative expediency is not a sufficient basis to justify infringing on his rights. See Frontiero,
411 U.S. at 688-90. He also challenges the effectiveness of the license-suspension scheme, noting
that only 3300 licenses of any kind have been suspended since 1996 and that only two plumbers'
licenses out of 18,791 were suspended in 1999. He contends that casting the net over all state
licensees to catch a few delinquent child-support obligors is unreasonable. See Whitworth, 699
S.W.2d at 197 (statute barring passengers from suing closely related drivers for car-wreck injuries
unfairly assumed that all closely related people collude in fraudulent claims); Sullivan v. University
Interscholastic League, 616 S.W.2d 170, 172 (Tex. 1981) (rule requiring all transfer students to sit
out year of interscholastic competition unfairly assumed that all transfer students were recruited). 
He proposes that only child-support obligors be required to disclose their social-security numbers
and their licenses.

 The requirement that applicants for licenses provide their social-security numbers
does not impose disparate treatment on similarly situated persons. All applicants for licenses must
provide their social-security numbers along with other identifying information such as their names
and addresses. The statute treats similarly situated persons (license applicants) identically (they must
provide the information). This is unlike the invalidated Wyoming statute that treated similarly
situated persons (licensed drivers who possess alcohol illegally) differently (drivers under age
nineteen lost their licenses; drivers aged nineteen and over suffered no license repercussions) based
on a characteristic not relevant to the licensing criteria or the problem to be corrected. Johnson v.
State Hearing Exam'r's Office, 838 P.2d 158, 173-74 (Wyo. 1992). The statute requires agencies
to treat people differently only if they are in different situations; the social-security numbers of
persons who are subject to child-support enforcement actions are released to a requesting agency,
while other licensees' numbers are confidential. Tex. Fam. Code Ann. § 231.302(e). 

 We conclude that this information-gathering statute is rationally related to the goal
of enforcing child-support obligations. Congress and the legislature have determined that the threat
of license denial or revocation could be useful in prodding recalcitrant child-support obligors to pay. (5)
They have determined that collecting the social-security numbers of license applicants will assist in
enforcing that penalty more quickly and accurately. The social-security number is unique to the
individual, unlike names or addresses. The cases Mauldin cites to argue that mere administrative
convenience is not sufficient to justify abridgement of a constitutional right are based on heightened
levels of scrutiny imposed on direct, specific deprivations of fundamental rights (6)--conditions we
have determined are not present here. Mauldin complains that the Board has not shown empirically
how much collecting the numbers helps enforcement, but the Board is not required to do so. See
Heller, 509 U.S. at 320-21.

 Although the Board's requirement that Mauldin provide his social-security number
does not relate to his qualifications to be a plumber, it is not an irrational requirement. Qualification
standards for licensing must rationally relate to the applicant's ability to perform the tasks for which
the license is sought. See Schware, 77 S.W.2d at 756 (history of arrests and Communist Party
membership did not necessarily show unfitness to practice law). The requirement that Mauldin
supply the information, however, is an objective, ministerial requirement rather than a subjective,
discretionary judgment on his fitness as a plumber. Cf. Sindel, 53 F.3d at 878 (attorney compelled
to "speak" when compelled to complete tax form). At most, a Board decision not to license him for
failure to supply the information is a judgment that, without the social-security number, Mauldin's
application is incomplete as it would be had he omitted his name, address, or other information.

 The Board's argument that it must collect this information from all applicants because
they are all potential delinquent child-support obligors--regardless of age, reproductive ability,
reproductive intentions, and personal integrity--lends some support to Mauldin's argument that the
requirement is overinclusive. (7) However, unlike the statute and rule invalidated in Whitworth and 
Sullivan, this statute survives the challenge because it does not punish all applicants. See Whitworth,
699 S.W.2d at 197 (barring suits between relatives); Sullivan, 616 S.W.2d at 172 (banning transfer
students from participating in varsity interscholastic contests for one year). Although the State
irrebuttably presumes all applicants to be potential delinquent child-support obligors, it does not take
the next step and presume them to be delinquent and punish them by denying them a license. (8) The
legislature limited the use of the social-security numbers collected to the purpose for which they
were collected; the numbers are otherwise confidential. (9) See Tex. Fam. Code Ann. § 231.302(e).

 That Mauldin has proposed an alternative system does not render the Board's system
unconstitutional. Mauldin proposes that, instead of collecting the social-security numbers of all
license-holders, the State could less intrusively achieve its objective of enforcing child-support
obligations by collecting social-security numbers and licenses of persons entering the domestic
relations system--i.e., persons divorcing or determined to be parents of children needing financial
support. The Board questions the effectiveness of the proposed system, noting that many delinquent
obligors never enter the domestic relations system. But the merits of Mauldin's proposal are not
relevant because the mere existence of alternative, even superior, solutions does not render the 
system under review irrational or unconstitutional. See Smith, 494 U.S. at 890 (some states'
permission of sacramental use of peyote does not mean Constitution requires such accommodation).


CONCLUSION


 Having concluded that the Board's requirement does not violate the equal-protection
clause of the Texas Constitution, we affirm the district court's judgment.



 

 Lee Yeakel, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Affirmed

Filed: December 31, 2002

Publish
1. Mauldin also complained that the requirement violates the federal Privacy Act, but the
district court's judgment states that Mauldin's attorney announced in open court that Mauldin was
no longer pursuing that claim. Mauldin does not challenge that statement in this appeal.
2. The relevant prophecy is that an anti-Christian beast will require everyone "to receive a
mark on his right hand or on his forehead, so that no one could buy or sell unless he had the mark,
which is the name of the beast or the number of his name. This calls for wisdom. If anyone has
insight, let him calculate the number of the beast, for it is a man's number. His number is 666." 
Revelation 13: 16-18.
3. "All free men, when they form a social compact, have equal rights, and no man, or set of
men, is entitled to exclusive separate public emoluments, or privileges, but in consideration of public
services." Tex. Const. art. I, § 3. 
4. Congress enacted the Religious Freedom Restoration Act of 1993 ("RFRA") in direct
response to the Supreme Court's decision in Smith. See 42 U.S.C. § 2000bb, et seq.; City of Boerne
v. Flores, 521 U.S. 507, 512 (1997). The Court reinstated a district court decision that found 
Congress exceeded its constitutional authority by enacting RFRA. Flores, 521 U.S. at 535-36.
5. The rationality of the relationship between license suspensions to child-support obligation
enforcement is not squarely presented here. Mauldin does not request relief from the revocation
provision in his petition below. He is not threatened with revocation or nonrenewal as a delinquent
child-support obligor, and asserts strenuously that he never will be.
6. See, e.g., Frontiero v. Richardson, 411 U.S. 677, 690-91 (1973) (invalidating regulation
of military benefits that granted benefits to all military wives, but required nonmilitary husbands to
prove that they provided less than half of family income; fact that not requiring nonmilitary wives
to prove dependence saved time not sufficient reason to discriminate based on gender).
7. It also invites some chilling extensions of that argument, such as justifying mandatory
provision of DNA samples by all citizens because all are potential criminals. Such extensions are
not before us.
8. To the extent that Mauldin considers the mere provision of his social-security number a
punishment, that is not the intention of the statute. It is an incidental, but permissible, effect of a
generally applicable statute, as discussed above.
9. Mauldin notes that the Board initially used the social-security numbers on licenses and
registration forms; those uses were not authorized by the challenged statute and apparently stopped
after complaints were made.